## Schofield *v.* Turner, Appellant.

*Statute of limitations—Mutual insurance company—Assessments—Receivers.*

The statute of limitations begins to run in favor of a member of a mutual insurance company against his liability to pay an assessment to the receiver of the company from the date of the decree of court authorizing the assessment, and not from the date of the declared insolvency of the company.

Argued Nov. 1, 1905. Appeal, No. 129, Oct. T., 1905, by defendant, from judgment of Superior Court, April T., 1905, No. 111, affirming judgment of C. P. No. 1, Allegheny Co., Dec. T., 1902, No. 866, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Charles S. Schofield, Receiver of the Ætna Mutual Live Stock Insurance Company v. Alfred Turner. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from Superior Court.

From the record it appeared that upon the application of the Attorney General, the Ætna Mutual Live Stock Insurance Company was, on June 29, 1895, declared insolvent by the court of common pleas of Dauphin county, and Charles S. Schofield was appointed receiver of the company. On November 18, 1896, the same court authorized the receiver to levy and collect an assessment upon the outstanding policies of the company. The present suit was brought on November 18, 1902. The defendant pleaded the statute of limitations.

*Error assigned* was judgment of the Superior Court affirming judgment of the court of common pleas against the defendant.

*W. K. Jennings*, with him *D. C. Jennings*, for appellant.

*Pier Dannals*, with him *Charles S. Schofield*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 2, 1906 :

A misapprehension of what was decided in Swearingen v. Dairy Company, 198 Pa. 68, is doubtless responsible for this

appeal. In that case the proceeding was instituted to compel the payment of balances due by stockholders for unpaid subscriptions to the capital stock of the insolvent corporation. The amount that each stockholder still owed on his stock was twenty-five per cent of its par value, a definite sum, which the company, at any time before its insolvency, might have called upon him to pay; but, until so called, there was no liability to pay, and the statute of limitations could not, therefore, begin to run. On January 5, 1891, when the company admitted its insolvency and executed a deed of assignment for the benefit of its creditors, every stockholder knew that the balance of his unpaid subscription—a fixed sum—might be needed for the payment of the company's indebtedness, and the representative of the company, its assignee, knew the balance was due. With the liability thus fixed and the right to enforce it established, the statute of limitations began to run from the time of insolvency. The liability of a stockholder being definitely fixed by the amount of his unpaid subscription, the corporation, before insolvency, may enforce it by calling for payment, and an assignee thereafter may at once proceed to reduce the liability to a judgment. This is what was decided in that case, summed up in the following sentence: "The right of action of the plaintiff, whatever it was, accrued upon the fact of insolvency of the dairy company shown by the assignment for the benefit of creditors, and the statute of limitations began to run from that date."

In the case of Franklin Savings Bank to use, etc., v. Bridges, 20 W. N. C. 43, cited by the appellant, it appeared that prior to the execution of the deed of assignment in 1878 the board of directors had laid an assessment for the entire balance due on the subscription to the stock. The right of action accrued at the time the assessment was laid, but the suit to recover the balance was not instituted until more than seven years after the deed of assignment had been executed. In the late case of Cook v. Carpenter, Lipper's Appeal, 212 Pa. 165, in which the present Chief Justice exhaustively reviews the cases on the subject of the running of the statute of limitations in suits brought on claims like the present, the same rule is recognized. Speaking of the liability of a stockholder to pay a balance due on his subscription when called for by

the company, he says : " Until such call, there is no obligation on the stockholder to pay. It may never be made. If the enterprise is successful and profitable from the start, or the provision for capital has been larger than actual needs require, the duty of payment is only a reserve duty for possible contingencies, and until they happen, either by calls by the corporation on the subscriptions, or by the rights of creditors, there is no duty of the subscriber to pay, no right of action against him for nonpayment, and no starting point for the statute of limitations."

The difference between the liability of a member of a mutual insurance company and the holder of capital stock in a corporation on his unpaid subscription seems to be overlooked by the appellant. Just what liability he assumed as a member of the insolvent mutual insurance company does not appear either from the plaintiff's statement or the affidavit of defense, but we assume it to be on a premium note or under the charter and by-laws of the association. Though the liability of a stockholder is different from that of a member of a mutual insurance company, it cannot be enforced in either case until a right of action accrues upon it, from which time only the statute begins to run. The stockholder, during the solvency of the corporation, can be called upon at any time by the board of directors to pay the balance due on his stock, but the member of the mutual association makes no such unconditional promise to pay. It is not a promise to pay the whole amount of his premium note, or any sum fixed by the charter or by-laws, but such sum or sums from time to time as may be assessed against him as his portion required for the necessities or losses of his company. How much that portion is cannot be known to him, nor to the company, until, after its necessities or losses have been ascertained, it is enabled to notify him how much he must pay and to demand payment of the same. His liability is not absolute, but conditional, depending upon the necessities or losses of the company and the demand of its officers. His liability upon his note, if he gives one, is upon assessment and notice of the same after the happening of a contingency upon which the company is authorized to make the assessment on the note, and upon performance by it of the conditions precedent to its right as the holder to enforce payment of the assessed liability; and so

it is if the liability arises from an agreement to be bound by the charter and by-laws.    The power and the duty of making the assessments are in the company until, upon its insolvency or dissolution, they pass to a receiver.    But neither the one nor the other can bring an action without first making the assessment and complying with the conditions upon which the member of the insurance company obligates himself to pay.    In Eichman v. Hersker, 170 Pa. 402, the assessment was not made within six years of the date of the policies and the premium note, nor within six years from the date of the losses, the payment of which had created the debt sought to be satisfied by assessment, and it was said by our late Brother DEAN, " Nor is it any answer to say the company was dilatory in levying the assessment.    Mere indulgence in levying the assessment will not bar the right; delay in enforcing collection after levy and demand would."    Here there was no delay after levy and demand.    That case, and Smith v. Bell, 107 Pa. 352, without more, were conclusive upon the court below in directing judgment to be entered.    After referring to Eichman v. Hersker, in Cook v. Carpenter, Lipper's Appeal, 212 Pa. 165, it is said : " Distinctions based on the wording of the charters or the statutes under which they were conferred were repudiated and the decision put explicitly on the general principle that the obligation was not to pay at once but upon a future event, the levying of an assessment by the directors, and the statute did not begin to run until such assessment."

Judgment affirmed.