## Long *v.* Sakleson et al. (Automobile Underwriters, Inc., Appellant).

Argued October 4, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles A. Wallace,* with him *Orville Brown,* of *Brown & Wallace,* for appellant.

*William McElwee, Jr.,* for appellee, was not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

Appellee obtained judgment for personal injuries in an automobile accident against one Sakleson, and brought in as garnishee upon attachment execution, State Automobile Insurance Association, a reciprocal insurance exchange organized in the State of Indiana and duly registered in this state. The claim against the garnishee was based upon a policy of insurance issued in its name to Sakleson, one of its subscribers. Service of the attachment upon the garnishee was effected by serving the insurance commissioner of this Commonwealth. The writ issued against the association by name without joining its attorney-in-fact, Automobile Underwriters, Inc., or any of its individual subscribers. The attorney-in-fact appeared d. b. e. to challenge the jurisdiction of the court over the garnishee, alleging that there is no legal entity of that name, and that service upon the commissioner was ineffective. The court below held the service valid. This appeal followed, with certification by the court below that questions under the Fourteenth Amendment and Section 2 of Article IV of the Federal Constitution were there raised. These are here presented.

Reciprocal insurance is not a new development in the insurance field, but is a departure from the more familiar methods. One writer defines reciprocal or inter-insurance as: "A system of insurance whereby several individuals, partnerships and corporations underwrite each other's risks against loss by fire or other hazard, through an attorney-in-fact, common to all, under an agreement that each underwriter acts separately and severally and not jointly with any other": Brennen, Inter-Insurance—Its Legal Aspects and Business Possibilities, 58 Cent. L. J. 323. Originally designed as a means of enabling members of close-knit groups to insure each other without joint liability, its peculiar organization lent itself to wider development because it

was beyond the scope of most regulatory and taxing statutes dealing with insurance. Each member who is a subscriber, by power of attorney, authorizes the attorney-in-fact to represent him individually in exchanging insurance with others, and to do every act that he could do in relation to suits or other proceedings. The subscriber contributes a premium, or membership fee, which is deposited by the attorney-in-fact for the association to meet expenses and obligations, with deduction of the attorney's fee or compensation. Individual liability is usually limited to a further amount equal to the first payment. None of the subscribers deal directly with each other, but all exchanges are effected through the common representative, the attorney-in-fact. He is given broad powers to select risks, pass upon claims, and, in general, do all things necessary to the conduct of the enterprise. For his services he is paid a fixed percentage of the contributions.

These organizations have attained a wide prevalence and with it has come statutory recognition. Pennsylvania first provided for their operation by the Act of June 27, 1913, P. L. 634. The garnishee in the present case was formed in Indiana under a similar law. These statutes, while recognizing such groups, do not define them in terms of existing systems of insurance, but rather treat them as a distinct type.

Reciprocal insurance bears a close resemblance to some preëxisting forms, yet differs from all. It has many aspects of a Lloyd's company which also is unincorporated, but the subscribers to an exchange are not merely underwriters, for they are themselves insured; a limited partnership differs from a reciprocal in that liability in the former is joint; a mutual insurance company is perhaps most closely analagous, but the liability of its policyholders is joint and several while in reciprocal insurance it is several. Mutual companies are incorporated, as are joint stock companies. The

feature of exchanged risks and mutuality distinguish reciprocal insurance from individual insurance.

It is the practice of reciprocal insurance exchanges, domestic or foreign, to contend, when sued in a court of law, that an exchange is not a juristic entity. It is contended that those engaged in it cannot constitute it an entity either by words, documents or estoppel, and that therefore a court acquires no jurisdiction over the exchange as a legal party unless it is so provided by statute.

We need not determine whether the exchange is an entity or not. Many courts have differed on the question, but the purpose in projecting this theory of non-suability is plainly evident. In this state there was filed in the department at Harrisburg authority for the insurance commissioner of Pennsylvania to be served with all legal processes issued against the State Automobile Insurance Association. Yet the contention has been made that such process cannot be directed against the exchange by name, because it has no legal existence apart from that of its members. If this position is sustained, as some courts have held, the litigant is driven to a suit against the attorney-in-fact, to be faced with the possible objection that the subscribers are liable. He then must undertake the almost impossible task of suing in equity all subscribers. This is a dilemma the legislature could not have contemplated in providing for the admission of these exchanges to do business in this state.

Courts have found difficulty in fitting this type of an organization into one of the well-known existing categories of business organizations that may be sued. This combination of subscribers has no such classification. From the structure of these groups it is apparent that one of the purposes of the scheme or system is to avoid classification as a suable entity. But the law would be altogether stupid if such avoidance were permitted to foreclose the question of whether the subscribers, through the adopted name of the reciprocal exchange,

may be recognized in court for certain purposes, though the exchange is an unincorporated association. This conclusion is inevitable if the nature and actual effect of their operations are considered. In these respects such an organization in effecting its legal engagements differs widely from the functioning of a mere unincorporated association. The members of the exchange operate as a unit, pool their resources and undertake contracts of indemnity far beyond their individual means. While unity of action is obtained through an attorney-in-fact who is empowered to accept risks, and conduct the administrative and executive functions of the enterprise, all is referable to the subscribers through the adopted or common name. Though the fiction is carefully maintained that the name only designates the place of exchange, or denominates a *res* or fund, it is clearly evident that it is intended to represent the group. Eighty-five per cent of all the funds which are collected is placed in the name of the association. It must have some legal capacity. It is idle to say that it is merely something floating in the air, or a stalking-horse as it were, to lure investors into buying insurance, and then vanishing when called on to pay loss. Here the exchange calls itself the State Automobile Insurance Association. The funds that are deposited with it are drawn upon by checks of the association. It is created as a statutory organization under the laws of another state and recognized by us as capable of doing business in this state.

In the Act of 1913, substantially reënacted by the Act of May 17, 1921, P. L. 682, these exchanges are referred to as distinct organizations and certain requirements are prescribed to be met before they shall be permitted to do business in the state. Appellant concedes that such an association may be sued in its own name if the laws of the state so provide. It contends, however, that our Act of 1921 did not so provide. This ignores its true purpose. Article X, section 1010, provides: "Concur-

rently with the filing of the declaration, the attorney of every foreign exchange shall, by a duly executed instrument filed in his office, constitute and appoint the insurance commissioner, or his successor, the true and lawful attorney, upon whom all lawful processes in any action, rule, order, or legal proceeding against such subscribers may be served; and therein shall agree that any lawful process against such subscribers which may be served upon him as the said attorney shall be of the same force and validity as if served on the said attorney and that the authority thereof shall continue in force irrevocable so long as any liability remains outstanding in this Commonwealth." The intent of this section was to subject the subscribers to the jurisdiction of our courts when service is made on the insurance commissioner. Appellant concedes this, but contends that the section does not authorize suits in the association's name, and that the process served on the commissioner must be directed against the subscribers individually or the attorney-in-fact to secure jurisdiction.

Article X, section 1010, of the Act relates to "foreign exchanges," from which it may be inferred that an exchange may have a situs or residence, distinct from that of its members. The exchange files reports, maintains reserves, and complies with other regulatory provisions. Having availed itself of the statutory privileges, having received a statutory residence and designation, we cannot regard it as a mere conglomerate of individuals. The act as it relates to liability for losses, suits on policy, and service of process, will receive a liberal construction. To hold otherwise would be to enable the group to practice a common business enterprise, maintain common funds, enjoy the advantages of cohesion, and while possessing these properties, achieve the accomplishment of instant dissolution into thousands of individual fragments with kaleidoscopic suddenness, when suit is brought against them by their adopted name.

The statute must be considered in the light of the purpose to be effected, and that broad purpose is clear. It is to protect the citizens of this state from the exchange or issuance of insurance by irresponsible organizations no matter where created. We hold that when a reciprocal insurance exchange does business in this state by an adopted name, service may be had upon it by serving the insurance commissioner. Such action, under the statute, will bind all the subscribers.

A provision in Section 1007 of Article X of the Act of 1921 assists the answer to the precise problem raised by appellant. The language referred to is: "Such attorney (-in-fact) shall not be required to furnish the names and addresses of any subscribers, nor the loss ratio." This section would not have been written into the act without a purpose; the means whereby a policyholder or one interested therein might ascertain the names of the individual subscribers for suit is not granted, the reason being that all are brought in by service on the exchange through the commissioner. Suit at law against one predicates a ratioed liability. The legislature did not intend, by granting the valuable right of admission to do business, to render suit against the real parties in interest impossible or so difficult it would be abandoned. It intended, rather, that a Pennsylvania citizen could secure redress upon the contracts of indemnity issued by this group through a suit against the exchange in the name in which it is registered in this state. We hold under the act that the consent of the subscribers to suit against them through the exchange is a prerequisite to the privilege of conducting their enterprise in this Commonwealth.

This conclusion has found support in other jurisdictions. In *Lewelling v. Manufacturing Wood-Workers' Underwriters,* 140 Ark. 124, 215 S. W. 258, the insurance commissioner of Arkansas was empowered to receive service by an act providing, "which service shall be valid and binding upon all subscribers." It was held that the

statute was intended to authorize the issuance of process in the common name under which the voluntary unincorporated association acted. A Michigan statute containing substantially the same provisions was given a similar construction in *Thomas Canning Co. v. Canner's Exchange Subscribers*, 219 Mich. 214, 189 N. W. 214. There suit was originally brought against the exchange "by" its attorney-in-fact. The case was dismissed as to the attorney and an appeal was taken by the exchange on the grounds that the service was ineffectual. Although the exchange had answered to the merits, the jurisdictional point was fully considered on the appeal. Speaking of the suit, the court said: "The object was to establish the amount and liability of the voluntary association upon a policy issued by the combined authority of members under its adopted name. . . . The method of enforcing that liability, so long as each subscriber is not holden in excess of his individual proportionate liability, is in principle but a procedural matter over which the legislature of each state has control within the constitutional limit against impairing the validity of contracts." It was held that the purpose of the statute required it to be given the construction which has been placed above upon our own.

Appellant contends that the suit should have been brought joining the attorney-in-fact whom the subscribers have authorized to defend action against them. This is very questionable. The attorney-in-fact is simply the agent; it has no interest in the funds of the association in its own right. Only a certain part of the funds are carried in its name to pay expenses, the greater portion must be deposited in the name of the association. Its interest is merely that of a custodian of a part of the common property under contract of the several subscribers. The chargeable fund itself is in the name of the association. No purpose would be served by holding that the attorney-in-fact be named a party, although it would be permissible to do so.

Appellant maintains that if our statute is thus construed, it is in violation of Article IV, section 2, of the Federal Constitution, and the Fourteenth Amendment thereto, as well as Article IX, section 1, of the Pennsylvania Constitution.

It has long been held that a state has the right to regulate the business of insurance. It is a business affected with vital public concern, and the state has full power to protect its citizens from the conduct of the business by those engaging in it irresponsibly or fraudulently: 2 Cooley, Constitutional Limitations (1927), p. 1132. Individuals and associations of this and of other states must comply with our laws for the transaction of such enterprise within the borders of the state in so far as they are reasonable: *Commonwealth v. Vrooman,* 164 Pa. 306; and see *Arrott v. Walker,* 118 Pa. 249.

As has been pointed out, the Act of 1921, supra, imposes several conditions upon which exchanges, and their subscribers, may engage in business here. These requirements are common to all reciprocal exchanges. Section 1010, the one now under consideration, requires the attorney-in-fact of foreign exchanges to execute an appointment of the insurance commissioner as "the true and lawful attorney, upon whom all lawful processes in any action, rule, order or legal proceeding against such subscribers may be served; . . ." Those who desire to avail themselves of the privileges extended by the Act must comply with these conditions. If the exchange be regarded as an entity, such procedural requirement for service is clearly valid. This state may impose a requirement of this sort as a condition of recognition and admission to do business: *List v. Commonwealth,* 118 Pa. 322; 1 Couch, Cyclopedia of Insurance Law (1929), section 245. If the subscribers, under an adopted name, be regarded as individuals acting severally through a common attorney, it or they could not engage in the insurance business here without designating the insurance commissioner as attorney for the service of process.

It is not arbitrary and unreasonable discrimination against subscribers in a foreign exchange. No denial of due process is thereby involved. It is a familiar principle that the citizens of another state who use our highways for vehicular traffic may be compelled by statute to designate the Secretary of the Commonwealth as their attorney for the receipt of process: Restatement, Conflict of Laws, section 84; *Hess v. Pawloski*, 274 U. S. 352; and see *Aversa v. Aubry*, 303 Pa. 139, 141; *Stoner v. Higginson*, 316 Pa. 481, 493-494. The basis of the rule is the right of the state to protect its people against unredressed injury by foreign citizens upon its highways. The same principle applies to the provision of the Act of 1921, relating to foreign exchanges and their subscribers. It is not unreasonable to make scattered individuals, collectively engaging in a business affected with such a high degree of public interest, amenable to service in the manner proposed.

The conclusion that the statute does not violate the Federal or State Constitution is fortified by the similar decision in the *Lewelling Case*, supra. The fact that Pennsylvania citizens are included among the subscribers does not alter the situation. These subscribers have voluntarily availed themselves of the benefits and privileges of exchanging insurance in a foreign reciprocal under the Act of 1921, and have also consented to the designation of the insurance commissioner as their process agent as required by that act.

Regardless of the statutory provision, it has been pointed out the subscribers in this exchange have consented to the insurance commissioner accepting service for them.

Turning to the power of attorney which the subscriber gives to the attorney-in-fact, it is noticed that it has complete authority to do anything that is necessary in regard to suits. As attorney-in-fact for the subscriber, it designated the insurance commissioner to receive processes for him, the subscriber, by and through his

adopted name, the State Automobile Insurance Association. In addition to the express power given as to suits and proceedings, the power of attorney also provides: "In addition thereto, Automobile Underwriters, Incorporated, is hereby specifically authorized for me and in my name to execute any and all documents and to do any and all things necessary to effect compliance under the laws of any State with respect to the exchange of insurance contracts provided for herein." In the Restatement of Conflict of Laws, supra, it is stated at section 81: "A state can exercise through its courts jurisdiction over an individual who consents to such jurisdiction."

Appellant argues, however, that this contractual consent is limited to process served on the commissioner directed to the individual subscribers by name. This reasoning avoids the clear implication of the letter of attorney. The Association by its chosen name was selected to represent the subscribers. That was all that was necessary. The contracts themselves to which the members subscribed were issued in its name. Their consent to its use in legal proceedings can be clearly implied. Where the attorney-in-fact of each of the subscribers in a reciprocal insurance exchange, with authority so to do, registers the exchange in this state under the Act provided therefor, by an adopted name, and designates an officer of the state on whom service can be made for the exchange by its adopted name, it will be considered as a several act of all the subscribers authorizing suits against each by and through the adopted name. It is representative of all, though in their several capacities. The subscribers of a reciprocal insurance exchange, in issuing a policy under an adopted name, issue it by the combined authority of all, though done by an attorney-in-fact. It is the several pledge of all the subscribers that under the adopted name all losses will be made good.

The agent of the subscribers has notice of the suit and has full power under their contracts to protect their rights. The court below had jurisdiction over the exchange and its subscribers.

Order affirmed with a procedendo.