78 A.2d 744 (1951)
In re INTERNATIONAL RE-INSURANCE CORP.
Court of Chancery of Delaware, New Castle County.
February 23, 1951.
C. Edward Duffy, of Wilmington, for the Claimant.
Arthur G. Logan, of Logan, Marvel & Boggs, of Wilmington, for the Receivers.
*745 WOLCOTT, Chancellor.

Motion to Strike the Amended Claim
The original claim of the Insurance Commissioner of Pennsylvania as Liquidator of Keystone Indemnity Exchange (hereinafter called "the Exchange") was filed on December 30, 1941. The receivers filed an exception to the original claim which came on for hearing before the Special Master. It then appeared that a number of substantial legal questions were raised by the exception and to facilitate their clarification the Special Master ordered the claimant to file an amended claim in the form of a complaint. Accordingly, the Liquidator filed an amended claim and the receivers moved to strike the amended claim on the ground that it was a substantial departure from the original claim of such nature as to be in fact an entirely new claim and thus subject to the provisions of the orders of this court of November 27, 1946 and December 1, 1948 prohibiting the filing of new claims without the consent of the claimant that the claim shall not participate in the partial distributions provided for in said orders.
The original claim had attached to it a document, upon which presumably it was based, called "Treaty of Re-Insurance No. 820". This document was executed by International Re-Insurance Corporation but was never executed on behalf of the Exchange. The amended claim has attached to it an instrument called "Memorandum of Agreement  Keystone Indemnity Exchange and International Re-Insurance Corporation  Assessment Bond". This agreement was executed by both parties on August 15, 1930.
It appears that the Treaty of Re-Insurance No. 820, an imperfect document on its face, was attached to the original claim in error. When the amended claim was ordered to be filed, the error was discovered and rectified by annexing the proper agreement upon which the claim was based. The Special Master was of the opinion that this was a proper subject of amendment. I agree with him. The motion to strike the amended claim is denied.

Motion to Disallow the Claim
In order to make clear the basis for the motion, it will be necessary to state in brief the facts upon which the claim is predicated. The Exchange was an unincorporated group of subscribers engaged among themselves in the reciprocal or inter-insurance business. It was organized in Pennsylvania in 1919 and continued in the reciprocal insurance business until June 8, 1933 when it was dissolved by the Court of Common Pleas of Dauphin County, Pennsylvania, after a finding of insolvency. The Insurance Commissioner of Pennsylvania was ordered to take possession of its property and to liquidate its business.
Reciprocal or inter-insurance is a system of insurance under which several individuals may underwrite each other's risks against various hazards through an attorney-in-fact common to all, under an agreement that each underwriter acts separately and severally and not jointly with any other. All the subscribers are insured and at the same time are insurers. The insurance exchange thus formed has no corporate *746 existence, but is an unincorporated association of individual subscribers. The attorney-in-fact represents each subscriber individually in exchanging insurance with others and is authorized to do every act that the subscriber could do in relation to the common enterprise. None of the members or subscribers to an insurance exchange deal directly with each other. All exchanges of insurance are effected through the common representative  the common attorney-in-fact. The subscriber pays a premium or membership fee to the exchange. From the premiums a fixed percentage is deducted as the attorney-in-fact's fee. Individual liability of the subscribers is usually limited to an additional amount equal to the first premium payment. Long v. Sakleson, 328 Pa. 261, 195 A. 416; Neel v. Crittendon, 353 Pa. 201, 44 A.2d 558; Taggart v. George B. Booker & Co., 3 Terry 128, 28 A.2d 690; 29 Am.Jur., Insurance, § 16.
A statute of Pennsylvania requires that subscribers exchanging contracts of indemnity shall be contingently liable in an amount equal to not less than one additional annual premium or deposit. Insurance Laws of Pennsylvania, Article X, Section 1004 as amended, 40 P.S. § 964. The policies of the Exchange, in compliance with this statute, contained the following provision: "N. In the event that the premium herein provided for, together with the premium deposits of other subscribers, and the reserves and surplus funds maintained by Keystone Indemnity Exchange shall be insufficient to pay the losses incurred, Assured shall be contingently liable for an additional amount, not to exceed, however, the annual premium or deposit charged herein. It is understood and agreed, however, by and between the subscriber and Keystone Indemnity Company, Attorney-in-Fact, that the said Keystone Indemnity Company shall procure adequate insurance and reinsurance in Companies of acceptable standing providing indemnity against any such contingent premium liability on the part of the Assured as herein provided."
The subscribers of the Exchange constituted Keystone Indemnity Company (hereinafter called "the Company"), a corporation of the Commonwealth of Pennsylvania, as their common attorney-in-fact to manage their business of inter-insurance.
On August 15, 1930, the Exchange, acting through its attorney-in-fact, the Company, pursuant to the requirement of Paragraph N of its policies, entered into an agreement with International Re-Insurance Corporation, a California corporation. This agreement provided that International Re-Insurance Corporation would indemnify the subscribers of the Exchange "against loss by reason of liability for assessment for which they are liable as policyholders * * up to an amount not exceeding One Million Dollars".
On June 9, 1931, by endorsement, International Re-Insurance Corporation, a corporation of the State of Delaware (hereinafter called "International"), assumed the obligations of International Re-Insurance Corporation, the California corporation. By further endorsement dated December 2, 1931, it was provided that the agreement of August 15, 1930 should remain in effect until canceled by either party upon three months' notice.
The Exchange, through the attorney-in-fact, paid all premiums due under the agreement. On July 1, 1932, the agreement of August 15, 1930 was canceled by International, said cancellation to be effective October 1, 1932. In April of 1933, receivers were appointed by this court for International because of its insolvency.
On September 12, 1938, the Court of Common Pleas of Dauphin County, Pennsylvania, ordered the subscribers of the Exchange holding policies approved and issued between April 9, 1929 and May 18, 1933 to pay an assessment of an amount equal to one annual deposit premium on each policy in order to pay the liabilities of the Exchange. The Liquidator then proceeded to collect the assessments.
The claim filed in this proceeding by the Liquidator of the Exchange was filed on the behalf of its subscribers, and the claimant specifically avers that the proceeds of the pending claim will be remitted to those subscribers whose policies were exchanged *747 during the period the re-insurance agreement was in force.
In support of the motion to disallow the amended claim, the receivers urge a number of points. The first of these is that the Exchange, acting through the attorney-in-fact, the Company, did not have the authority to enter into the agreement.
The authority of the Company is measured by its power of attorney for the reason that the power of attorney signed by subscribers in a reciprocal or inter-insurance exchange is to all intents and purposes the charter of the business and prescribes the duties and powers of the attorney-in-fact through whom the business is carried out. Wysong v. Automobile Underwriters, Inc., 204 Ind. 493, 184 N.E. 783, 94 A.L.R. 826.
The power of attorney under which the Company acted authorized it "to do all things which a subscriber or subscribers might or could do with reference to all policies issued and all other acts incidental to the lawful management of the business of insurance".
A reciprocal insurance exchange, under the law of Pennsylvania, is specifically authorized as part of the normal operation of its business to enter into re-insurance agreements for the protection of its subscribers. 40 Purdon's Statutes, Sec. 442. And Paragraph N of the policies issued to the subscribers of the Exchange specifically required the Company to procure adequate re-insurance providing indemnity against contingent premium liability on the part of the subscribers.
It seems obvious to me that the agreement of August 15, 1930, which the Company entered into as attorney-in-fact for the Exchange, was in furtherance of Paragraph N of the policies of insurance issued to the subscribers, was directly authorized by the Pennsylvania statute permitting reinsurance, and must be said to be an act "incidental to the lawful management of the business".
I am accordingly of the opinion that the Special Master was correct in holding that the Company had lawful authority to enter into the re-insurance agreement.
The second point urged by the receivers in support of their motion is that the Liquidator of the Exchange has no authority to prosecute the claim on behalf of the subscribers, and that the subscribers themselves are indispensable parties to the prosecution of such a claim. The Special Master agreed with the position taken by the receivers and recommended the disallowance of the claim on this ground among others.
The argument requires a consideration of the authority of the Insurance Commissioner of Pennsylvania as Liquidator of insurance exchanges. Under Pennsylvania law, when an insurance exchange becomes insolvent and a finding of such insolvency is made, authority exists for the appointment of the Insurance Commissioner of Pennsylvania as Liquidator who then becomes vested by operation of law with title to all of the property, contracts and rights of action of the exchange. 40 Purdon's Statutes, Sec. 206.
The duties of the Liquidator of a dissolved insurance exchange are to collect the assets of the defunct exchange, convert them into cash and apply the proceeds of such conversion to the payment of the expenses of liquidation and the discharge of the debts due to the creditors, either in whole or in part. The real assets of the exchange which come into the possession of the Liquidator are the obligations of the subscribers for assessment. Donaldson v. Fortna, 76 Pa.Super. 403.
It seems obvious that the Pennsylvania proceeding resulting in the appointment of a Liquidator is intended for the protection of creditors of the Exchange. This conclusion follows from the requirement that before a Liquidator will be appointed, the Exchange must be insolvent and that, upon appointment, he is given title to all realizable assets of the Exchange with the direction to liquidate them and pay off the creditors. It would seem to follow, therefore, that the Liquidator has title only to assets of the Exchange to which the creditor may look for payment, and does not take title to assets belonging to the subscribers individually for their own protection against further loss.
*748 The agreement of August 15, 1930 provides that International will "indemnify the subscribers (of the Exchange) against loss by reason of liability for assessment for which they are liable as policyholders". The only persons who benefit from the agreement of indemnification are the subscribers of the Exchange, provided they are liable for assessment.
The subscribers of the Exchange agreed to act only through the attorney-in-fact common to all of them. The agreement with International was entered into purportedly by the Exchange acting through its attorney-in-fact, but actually the Company is the attorney-in-fact only for the individual subscribers to the Exchange. It had no authority to enter into any agreement except one within the powers conferred by its power of attorney and for the benefit of its principals.
The agreement is to indemnify against liability for assessment and only the subscribers could be so liable. The Exchange, as an Exchange, by the very nature of things could not be liable for assessment. Since an assessment can be made only after insolvency of the Exchange and its ordered dissolution, the promise of indemnification can run only to persons liable for assessment  that is, the subscribers.
It seems clear to me that the agreement to idemnify made by International was not made for the benefit of the Exchange except in the very loose sense that the Exchange is all the subscribers. This being so, the indemnification agreement is not an asset of the Exchange, title to which devolved upon the Liquidator by operation of law, and he is not entitled to press this claim as the Liquidator of the Exchange.
Any liability of International under the agreement of indemnification was to the subscribers of the Exchange individually and severally. International did not promise to pay any assessment levied against the subscribers as a group, but promised to indemnify against loss suffered by individual subscribers by reason of liability for assessment. It follows that each subscriber of the Exchange who paid an assessment was entitled to be indemnified and could have presented a separate claim in this cause. He could have filed his claim as an individual or through his agent, but the Liquidator having produced no proof of such agency cannot press the claim as the agent of the subscribers.
The Special Master recommended that the Liquidator be held to have no standing to maintain the amended claim. I agree with the Special Master's conclusion in this respect.
The acceptance of the Special Master's recommendation to the effect that the present claim cannot be maintained by the Liquidator is dispositive of the matter. Two other contentions were made by the receivers in support of their motions to disallow the claim.
The first of these is that the agreement of re-insurance used as the basis for the claim created a liability on the part of International only after an assessment of the subscribers of the Exchange had been made by a court of competent jurisdiction, and after the subscribers had suffered a loss by reason of such assessment. The agreement was cancelled as of October 1, 1932. No assessment was made against the subscribers of the Exchange until September 12, 1938, at which time the subscribers of the Exchange became liable for the assessment. Schofield v. Turner, 213 Pa. 548, 62 A. 1068.
The Special Master was of the opinion that any loss of the subscribers occurred more than six years after the expiration of the agreement and was not, therefore, a loss occurring within the life of the agreement for which International would be liable. Without further discussing the point, it will suffice to say that I agree with the conclusions of the Special Master in this respect for the reasons which appear in his draft and final report.
The last contention made by the receivers was that the claim cannot be maintained by reason of a provision in the agreement of re-insurance which provides "definite claim for loss hereunder shall be made on International within two years after the expiration of this agreement", and since the claim was not filed within the two year period following the termination *749 of the agreement, it is barred. The Special Master was of the opinion that it would be impossible to make a definite claim for loss by reason of liability for an assessment unless at the time of making the claim there was a valid assessment of subscribers in effect. There being no such assessment within the two year period, the Special Master concluded that the time had expired within which claims under the agreement for loss by reason of assessment could have been filed. Without further discussion, I will merely state that I agree with the conclusions of the Special Master in this respect.
The recommendations of the Special Master in his draft and final report are accepted and the motion to disallow the amended claim is granted.
An order may be presented upon notice.