641 A.2d 1255

**GOLDEN RULE INSURANCE COMPANY, Petitioner,**

v.

**INSURANCE DEPARTMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1993.

Decided April 20, 1994.

Reargument Denied June 29, 1994.

510

Curtis J. Dickinson, for petitioner.

Amy L. Weber, Dept. Counsel, for respondent.

Before DOYLE and COLINS, JJ., and DELLA PORTA, Senior Judge.

COLINS, Judge.

Golden Rule Insurance Company (GRIC) petitions for review of a final order of Cynthia Maleski (Commissioner), the Commissioner of the Pennsylvania Department of Insurance (Department), which disapproved rate modifications for four forms of insurance policies submitted by GRIC.

On October 21, 1991, GRIC submitted revised rate tables for policy forms GR–7, GR–8, GR–102 and GR–106, which called for rate increases of 155%, 155%, 94.6%, and 76% respectively. All four of these policy forms are for "guaranteed renewable" policies. A guaranteed renewable policy allows GRIC to increase the premiums on a yearly basis but obligates GRIC to renew the policy at the policyholder's election. GRIC cannot unilaterally cancel the policy regardless of the degree of risk.

On January 15, 1992, 85 days after GRIC submitted the rate tables, the Department issued a written disapproval of the rate increases and stated that it would approve only a 50% increase for each policy form. GRIC requested a formal hearing on the merits of its rate filings. An administrative hearing was held on April 14 and 15, 1992. At the hearing GRIC presented the testimony of William H. Odell, the actuary who prepared the rate filings on GRIC's behalf. The Department presented the testimony of Carol Slack, a Department actuary with the Accident and Health Bureau.

The April hearings dealt with the core dispute between GRIC and the Department, specifically whether the rate increases should be based on insurance companies' past experience in Pennsylvania or their past experience nationwide. GRIC and the Department differ on whether past Pennsylvania experience by other insurance companies is a credible factor in determining what GRIC's rates should be. GRIC believes that past Pennsylvania experience is not at all credible and should not be a factor in determining GRIC's rates. The Department believes that past Pennsylvania experience is somewhat credible and should be a factor in determining the rates. The significance of this disagreement is that Pennsylvania's rates for health and accident insurance are generally lower than the nationwide average. GRIC claims that the national experience should control and that the proposed large rate increases are needed to bring its rates in Pennsylvania up to national levels. The Department has taken the position that the risk level in Pennsylvania for health and accident policies is lower than nationwide levels, mainly because Blue Cross/Blue Shield, which insures 60% of the state's population, ends up insuring most high-risk candidates. Therefore the Department believes that GRIC does not need to charge rates at the national level to make a reasonable profit.

After the April hearings, final briefs were submitted to the Commissioner in September 1992. On March 12, 1993, the Commissioner issued a final order disapproving the rate filings submitted by GRIC. GRIC now petitions this Court for review of the Commissioner's final order.

 Our scope of review of the Commissioner's adjudication is limited to determining whether the adjudication violates the insurance company's constitutional rights, is not in accordance with the law, violates the practice and procedure of Commonwealth agencies or whether a finding of fact necessary to support the adjudication is not supported by substantial evidence. *Boston Old Colony Insurance Company v. Insurance Department of the Commonwealth of Pennsylvania,* 146 Pa.Commonwealth Ct. 142, 604 A.2d 1191 (1992). The Commissioner's adjudication is not in accordance with the law if it represents a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Slawek v. State Board of Medical Education and Licensure,* 526 Pa. 316, 586 A.2d 362 (1991). GRIC raises five issues on appeal.[1]

## *ISSUE I*

### DOES THE COMMISSIONER HAVE AUTHORITY TO DISAPPROVE RATE MODIFICATIONS FOR RENEWALS OF PREVIOUSLY APPROVED INSURANCE FORMS?

 GRIC argues that the Commissioner does not have authority to disapprove rate modifications for renewals of previously approved accident and health insurance forms. Conversely, the Commissioner asserts that Section 616 of The Insurance Company Law of 1921 (Law),[2] 40 P.S. § 751, grants her the authority to approve or disapprove all health and accident policies, including renewal premiums. The language of the statute supports the Commissioner's position. Section 616 of the Law provides, in pertinent part:

1. GRIC also contends that the Commissioner's rate regulations amount to an unconstitutional taking of property. GRIC's takings argument is that the Commissioner's regulation forces the company to charge such a low rate that it amounts to a confiscation or a "de facto" taking of property. This argument is without merit, because the Department's findings of fact, which are supported by substantial evidence, establish that a 50% rate increase will be sufficient for GRIC to make a reasonable profit.

2. Act of May 17, 1921, P.L. 682, *as amended.*

No policy of insurance against loss from sickness, or loss or damage from bodily injury or death of the insured by accident, shall be issued or delivered by any insurance company, association or exchange issuing such policies, to any person in this Commonwealth until a copy of the form thereof, and of the classification of risks and the premium rates pertaining thereto, have been filed with and formally approved by the Insurance Commissioner.

In determining whether Section 616 of the Law refers to the renewal of policies, this Court will consider both the plain wording of the statute and the effect of excluding premium renewals from the statute's purview.

In interpreting this statute, our first inquiry must be directed to ascertaining the primary purpose of the statute. *Hatfield v. Continental Imports, Inc.*, 530 Pa. 551, 610 A.2d 446 (1992). The clear aim of the legislature in enacting Section 616 of the Law was to endow the Commissioner with the authority to regulate health and accident insurance rates. If this Court were to determine that premium renewals are not subject to approval by the Commissioner, as GRIC urges, the result would substantially diminish the Commissioner's power to regulate insurance rates. Such a result would be inconsistent with the basic goal of this Court in interpreting statutes, which is to ascertain and effectuate the intent of the legislature giving effect to all its provisions. *Philadelphia Suburban Corporation v. Board of Finance and Revenue*, 535 Pa. 299, 635 A.2d 116 (1993).

Moreover, the plain wording of the statute supports the Department's position. Section 616 of the Law is inclusive and pertains to all policies written in the health and accident insurance industry. The statute expressly reads that no policy of insurance shall be issued or delivered by any insurance company until the premium rates of that policy have been formally approved by the Commissioner. We agree with the Department's contention that the renewal of an insurance policy at a different premium essentially creates a new contract, regardless of the fact that the rest of the policy terms remain the same. Accordingly, we conclude that Section 616

of the Law permits the Commissioner to approve or disapprove rates for premium renewals.

## ISSUE II

### WERE GRIC'S RATE FILINGS DEEMED APPROVED BY OPERATION OF LAW PURSUANT TO SECTION 354 OF THE LAW, 40 P.S. § 477b?

Section 354 of the Law, 40 P.S. § 477b, provides for a swift determination by the Commissioner as to whether insurance forms are approved or disapproved. Section 354 protects the insurance company from undue delay by including a deemer provision, which mandates that forms are deemed approved if the Commissioner does not act within 30 days after filing. The statute does reserve for the Commissioner the right to extend this time period by giving written notice to the insurer that she wishes to extend the period for approval or disapproval for an additional 30 days. The insurance company's filing would be deemed approved after 60 days in such an instance.

■ The initial question the parties raise is whether Section 354 of the Law applies to accident and health rate filings. The Commissioner argues that Section 354 does not apply to accident and health rate filings,[3] whereas GRIC contends that Section 354 does apply to accident and health rate filings. Section 354 of the Law provides, in pertinent part:

It shall be unlawful for any insurance company . . . to issue, sell, or dispose of any policy, contract, or certificate, covering life, *health, accident,* personal liability, fire, marine, title, and all forms of casualty insurance, . . . until the forms of

3. The Commissioner's contention that Section 354 applies only to policy forms but not to accident and health rate filings, is undermined by the Department's notification to GRIC in writing that it was extending the 30–day review period, pursuant to Section 354 of the Law. The Department's compliance with Section 354 only serves to demonstrate its applicability to accident and health rate filings. GRIC acted properly, when it relied on the Department's compliance with Section 354 and deemed its rates approved 60 days after it submitted its rate filings.

the same have been submitted to and formally approved by the Insurance Commissioner. . . .

Forms so filed . . . shall be deemed approved at the expiration of thirty (30) days after filing, unless earlier approved or disapproved by the Insurance Commissioner. The Insurance Commissioner, by written notice to the insurer may, within such thirty-day period, extend the period for approval or disapproval for an additional thirty (30) days.

*Such approval shall become void upon any subsequent notice of disapproval from the Insurance Commissioner,* . . . except that this provision shall not affect contracts issued prior thereto.

40 P.S. § 477b (emphasis added). After reviewing the statute, we see no reason why Section 354 would not apply to the accident and health insurance rate filings submitted by GRIC. Section 354 expressly includes health and accident policies within its mandates.

■ The second question this issue raises is whether, pursuant to Section 354, GRIC's rate filings were deemed approved by operation of law, because the Commissioner did not disapprove the filings until 85 days after they were submitted by GRIC. GRIC argues that its rate filings were deemed approved after 60 days, pursuant to Section 354 of the Law, and, therefore, the Commissioner could not subsequently disapprove its rate increases. GRIC's position is only partly correct.

Pursuant to Section 354, GRIC's rate filings, submitted on October 21, 1991, were deemed approved by operation of law; however, such rates were valid only from December 21, 1991 (60 days after GRIC submitted the rate filings) until January 15, 1992, when the Department disapproved the rates. GRIC's contention, that once the default approval took effect the Department could not revoke this approval, is clearly flawed. Section 354 expressly states that the deemed approval becomes void upon any subsequent notice of disapproval. GRIC's deemed approval became void as soon as the Commissioner gave her subsequent notice of disapproval on January

15, 1992. Therefore, any policies issued by GRIC which implemented the proposed rate increases during the 25 days of deemed approval are valid according to Section 354. Any policies issued at the increased rate either before December 21, 1991 or after January 15, 1992 are invalid, pursuant to Section 354 of the Law.

## *ISSUE III*

### ARE THE COMMISSIONER'S FINDINGS OF FACT SUPPORTED BY SUBSTANTIAL EVIDENCE?

The Commissioner made 105 findings of fact in her adjudication, and GRIC has asserted that 40 of these findings are not supported by substantial evidence. We will evaluate this issue without getting into an exhaustive and unnecessary review of each and every individual finding of fact which GRIC has challenged. After reviewing the Commissioner's disputed findings of fact and the sources identified by the Commissioner which support those findings, we conclude that all of the necessary findings of fact are supported by substantial evidence for two reasons.[4]

First, GRIC's challenges to most of the Commissioner's findings of fact are thinly veiled attempts to establish that its actuaries and expert witnesses are more credible than the Department's actuaries and expert witnesses. However, we cannot disturb the Commissioner's findings of fact on this basis, because the Commissioner has the authority to make credibility determinations and weigh the evidence presented. *Prudential Property and Casualty Insurance Company v. Department of Insurance,* 141 Pa.Commonwealth Ct. 156, 595 A.2d 649 (1991).

Second, the various findings of fact which GRIC challenges are supported by either one or more of the following sources:

---

4. Substantial evidence exists if the record contains sufficient relevant evidence as a whole which a reasonable mind might accept as adequate to support a conclusion. *Levering v. Workmen's Compensation Appeal Board (Buck Company, Inc.),* 153 Pa.Commonwealth Ct. 533, 621 A.2d 1178 (1993).

(1) the testimony of Carol E. Slack, the expert witness for the Department; (2) the testimony of William H. Odell, the expert witness for GRIC; (3) the lack of relevant evidence presented by GRIC on some issues; (4) the mischaracterization by GRIC of general, non-binding statements by Department officials as binding "admissions"; or (5) GRIC's Exhibits 1, 2, or 3, presented at the April 14, 1992 hearing before the Commissioner.

## ISSUE IV

### HAS GRIC BEEN AFFORDED AN ADEQUATE ADMINISTRATIVE REMEDY CONSISTENT WITH THE DUE PROCESS REQUIREMENTS OF THE STATE AND U.S. CONSTITUTIONS?

█ GRIC argues that it was denied due process by the Commissioner, because by the time the Commissioner got around to making a final adjudication, the term of the policy rate submissions had already expired. Therefore, GRIC argues in its brief, that pursuant to the maxim "justice delayed is justice denied," it was denied due process of law.

We disagree with GRIC's argument because Section 354's deemer provision adequately protects insurance companies from unreasonable delay. Section 354 gives the Commissioner 30 days to approve or disapprove a filing and permits her to extend this evaluation period by 30 days. Section 354 also operates to approve by law any rate filing not acted upon by the Commissioner within the 60 day evaluation period. This deemer provision more than adequately protects the interest of the insurer in getting a swift determination which does not unduly interfere with the administration of its business interests. In the present matter the deemer provision served to permit GRIC to implement the rate increases during the 25-day period that its rate submissions were deemed approved.

█ Moreover, while the Commissioner's final determination and order were more than a year forthcoming, the Department made its initial decision within three months. This initial decision put GRIC on notice that its rate proposals

were not considered acceptable by the Department. At that time, GRIC could have adjusted its rate proposals to comply with the Department's guidelines, but it instead chose to further challenge the Commissioner's initial determination. GRIC must accept the unavoidable consequence that some time will elapse during the reconsideration of the merits by the Commissioner. It could be argued that the Commissioner should have acted more swiftly in rendering a final adjudication, but her delay in rendering a final decision, given the complexity of the issues involved, was not so unreasonable or egregious that it would amount to a conclusion that GRIC was denied due process of law. Due process of law admits that courts and administrative agencies will need a reasonable amount of time to evaluate the evidence submitted and render a fair decision on the matters presented.

## *ISSUE V*

## DO THE COMMISSIONER'S RATE REGULATIONS VIOLATE THE CONTRACTS CLAUSE OF THE UNITED STATES CONSTITUTION?

GRIC's Contracts Clause argument is largely without merit. GRIC's position borders on arguing that the Commissioner should have no power to regulate the insurance industry, because such regulation of rates impairs contracts made between insurance companies and private individuals. Specifically, GRIC asserts that its ability to raise the premiums to meet the level of risk is such an essential feature in the guaranteed renewal policy that if the state interferes with the process of determining the premium rate, it is unconstitutionally impairing the insurance contract.

The United States Supreme Court held in *Energy Reserves Group, Inc. v. Kansas Power and Light Company,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), that if a litigant proves that a state regulation substantially impairs a contract, the state must uphold the validity of the statute by demonstrating that it has a legitimate public purpose which establishes the need for the regulation. In the instant matter,

GRIC has not shown that the Department's attempt to regulate its rates constitutes a substantial impairment of any contract. Even if we assume arguendo that GRIC could show a substantial impairment of contract, such an impairment would be justified by a legitimate state purpose. Our Supreme Court has held that the Commonwealth may regulate the business of insurance, because it is a business affected with a public concern. *Long v. Sakleson,* 328 Pa. 261, 195 A. 416 (1937). The Commonwealth's interest is in protecting its citizens from the conduct of business by those engaging in it irresponsibly or fraudulently. *Id.* State regulation of the insurance business is constitutional. *Pennsylvania Insurance Department v. Philadelphia,* 196 Pa.Superior Ct. 221, 173 A.2d 811 (1961).

Accordingly, the Commissioner's March 12, 1993 final order is reversed with respect to her determination that GRIC's rate filings were not approved by operation of law pursuant to Section 354 of the Law. We hold that GRIC's rate filings were approved by operation of law pursuant to Section 354 of the Law for the 25–day period between December 21, 1991 and January 15, 1992. The Commissioner's March 12, 1993 final order is affirmed in all other respects.

## ORDER

AND NOW, this 20th day of April, 1994, the order of the Commissioner of the Pennsylvania Department of Insurance is reversed with respect to her determination that Golden Rule Insurance Company's rate filings were not approved by operation of law, pursuant to Section 354 of the Insurance Company Law, 40 P.S. § 477b, for the 25–day period between December 21, 1991 and January 15, 1992. The Insurance Commissioner's final order is affirmed in all other respects.