William W. YODER and Thomas H. Yoder, Appellants,

v.

AMERICAN TRAVELLERS LIFE INSURANCE COMPANY n/k/a Conseco Senior Health Insurance Company, and Conseco, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Sept. 24, 2002.
Filed Dec. 20, 2002.

and DG came to care for MTJ is "questiona- ble."

Robert J. Magee, Allentown, for appellants.

Platte B. Moring, Allentown, for appellee.

Before: McEWEN, P.J.E., TODD and MONTEMURO,* JJ.

OPINION BY TODD, J.

¶ 1 Appellants William W. Yoder and Thomas H. Yoder, executors of the estate of Jean F. Yoder,[1] appeal the grant of summary judgment to American Travellers Life Insurance Company, now known as Conseco Senior Health Insurance Company, and Conseco, Inc. (the "Insurers"). We affirm.

¶ 2 In 1989, the Insurers issued a "Supplemental Nursing Home and Home Health Care Policy" to Yoder for long-term nursing home care insurance, effective August 17, 1989. The policy provided a monthly benefit of $3,000, increasing 5% per year for the first 15 years of the policy. The policy was "guaranteed renewable," meaning that the policy would be renewed each year as long as the premiums, which were subject to state-approved yearly increases, were paid.[2]

¶ 3 For the first 10 years of the policy, the premiums remained constant and were paid diligently by Yoder. In 1998, Yoder entered a nursing home, without a prior hospital stay. When she sought coverage

---

* Retired Justice assigned to Superior Court.

1. Although this action was originally brought on behalf of Mrs. Yoder, she died after the filing of the notice of appeal in this case, and the executors have been substituted as the named parties. For simplicity, we will refer to Appellants and Mrs. Yoder as Yoder.

2. The policy stated:
 This policy is guaranteed renewable for your lifetime or until the Policy's Aggregate Maximum Benefit Period has been reached. It may be kept in force by the timely payment of premiums. We cannot cancel this Policy as long as you pay the premiums. We can change the renewal premium rates. We can only change them if they are changed for all policies in your state on this policy form. Renewal premiums due after a change is implemented will be based on the new rate. Notice of any change in rates will be sent at least 30 days in advance. Premium rates can not be changed more than once a year.
 (Policy, 8/17/89, 1 (R.R. 18A).)

under her insurance policy, the Insurers denied coverage, citing an exclusion in the insurance contract which required a 3–day hospital stay within the 30 days prior to entry to the nursing home (the "prior institutionalization exclusion").

¶ 4 In response to the denial of coverage, Yoder sued the Insurers, seeking declaratory judgment, and alleging bad faith, and unfair trade practices. As the basis for her request for declaratory relief, Yoder noted that on December 15, 1992, after the effective date of her policy, but before she was admitted to the nursing home, the Pennsylvania legislature .enacted P.L. 1129, No. 148 (the "Act"). The Act, *inter alia,* prohibits prior institutionalization exclusions of the type contained in Yoder's policy. *See* 40 P.S. § 991.1108.[3] By its terms, this provision of the Act applies to "all policies delivered or issued for delivery in this Commonwealth on or after the effective date of this article [Feb. 13, 1993]." 40 P.S. § 991.1115. Yoder asserted that, by operation of the Act, the exclusion relied on by the Insurers was void in the renewals of her policy subsequent to the Act's effective date, and, thus, inoperative when she entered the nursing home in 1998.

¶ 5 The trial court, by the Honorable Thomas A. Wallitsch, granted the Insurers' motion for judgment on the pleadings on the unfair trade practices count. Later, the trial court granted the Insurers' motion for summary judgment on the remaining counts, finding that the Act did not apply to Yoder's policy, and, therefore, that the exclusion was enforceable. This timely appeal followed.

■ ¶ 6 In her first issue on appeal, Yoder asserts that the trial court erred in finding that the Act was inapplicable to her policy. Yoder argues that the annual renewals of her policy constituted new contracts to which the Act applied. We cannot agree.

¶ 7 In defining the scope of the Act, the legislature omitted reference to policy renewals, prescribing only that the Act applies to policies "delivered or· issued for delivery" in this Commonwealth after the effective date. 40 P.S. § 991.1115. The omission of reference to "renewals" is conspicuous because the legislature in various instances has enacted laws explicitly applying to policies issued *or renewed* after a certain date. *See, e.g.,* 40 P.S. § 764d (health insurance requirements related to mastectomies for policies "delivered, issued for delivery, renewed, extended or modified" after the act's effective date); 40 P.S. § 775.2 (health insurance requirements for adopted children for policies "delivered or issued for delivery," and "to all renewals," after the act's effective date); 40 P.S. § 774 (health insurance requirements for newborn children for policies "delivered or issued for delivery," and "to all renewals," after the act's effective date); 75 Pa.C.S.A. § 1792(b) (mandatory deductibles for automobile collision insurance for policies "issued or renewed" after the act's effective date). Given this omission, we are compelled to conclude that the legislature did not intend the Act to apply to policy renewals.

---

**3.** This section provides:

**Prior institutionalization**

No long-term care insurance policy shall:

(1) condition eligibility for any benefits on a prior stay in an institution or a prior chronic condition;

(2) condition eligibility for benefits provided in an institutional care setting on the receipt of a higher level of institutional care; or

(3) condition eligibility for any benefits other than waiver of premium, postconfinement, postacute care or recuperative benefits on a prior institutionalization requirement.

40 P.S. § 991.1108.

¶ 8 Seeking a contrary conclusion, Yoder cites *Golden Rule Ins. Co. v. The Ins. Dep't,* 163 Pa.Cmwlth. 509, 641 A.2d 1255 (1994). We find that case, even were we to approve its analysis,[4] to be distinguishable.

¶ 9 In *Golden Rule,* the Commonwealth Court reviewed a challenge to the Pennsylvania Insurance Commissioner's disapproval of premium rate increases for renewals of an insurer's previously approved insurance forms. The crux of the case concerned the statutory requirement, using language similar to that in the policy at issue here, that the Commissioner approve premium rates for all policies "issued or delivered" in this Commonwealth, but not explicitly for policy renewals:

> No policy of insurance against loss from sickness, or loss or damage from bodily injury or death of the insured by accident, shall be issued or delivered by any insurance company, association or exchange issuing such policies, to any person in this Commonwealth until a copy of the form thereof, and of the classification of risks and the premium rates pertaining thereto, have been filed with and formally approved by the Insurance Commissioner.

*Id.* at 515, 641 A.2d at 1257 (quoting Section 616 of the Insurance Company Law of 1921). Although the statute did not explicitly apply to renewals, the Commonwealth Court nonetheless determined that the statute must be interpreted broadly to effectuate the legislature's purpose:

> If this Court were to determine that premium renewals are not subject to approval by the Commissioner, as GRIC urges, the result would substantially diminish the Commissioner's power to regulate insurance rates. Such a result

would be inconsistent with the basic goal of this Court in interpreting statutes, which is to ascertain and effectuate the intent of the legislature giving effect to all its provisions.

*Id.* By contrast, we note that in interpreting the statute at issue in the instant case, we are not concerned with ascertaining the regulatory boundaries of a state agency. The absence of reference to "renewals" in the Act does not readily conflict with its broader stated purpose, as was the case in *Golden Rule.*

¶ 10 Further, in *Golden Rule* the Commonwealth Court concluded that *changes* in premium rates were the key to the statute's application:

> The statute expressly reads that no policy of insurance shall be issued or delivered by any insurance company until the premium rates of that policy have been formally approved by the Commissioner. We agree with the Department's contention that *the renewal of an insurance policy at a different premium essentially creates a new contract, regardless of the fact that the rest of the policy terms remain the same.*

*Id.* at 515, 641 A.2d at 1258 (emphasis added). Again, by contrast, it is undisputed that, here, Yoder's policy premiums remained unchanged throughout the relevant time period. Thus, *Golden Rule,* both because of the context of its holding, as well as its narrowness, is unhelpful to Yoder.

¶ 11 Yoder also cites *Benat v. Mutual Benefit Health and Accident Ass'n,* 191 Pa.Super. 547, 159 A.2d 23 (1960), *aff'd* 402 Pa. 208, 166 A.2d 880 (1961), for the proposition that policy renewals are new contracts. Addressing the validity of a quar-

---

4. We note that "[a]lthough we frequently turn to the wisdom of our colleagues on the Commonwealth Court for guidance, the decisions of that court are not binding on this Court." *Kraus v. Taylor,* 710 A.2d 1142, 1144 (Pa.Super.1998).

terly-renewed policy, in *Benat,* this Court noted that "[t]he renewal option simply means that the policy terminates at the expiration of each quarterly period for which a premium has been accepted, and that additional quarterly periods constitute new contracts." *Benat,* 191 Pa.Super. at 551, 159 A.2d at 24–25. However, in that case, unlike the instant case, the insurer was not compelled to accept renewal premiums, and could, by rejecting them, terminate the policy. *Id.* at 550, 159 A.2d at 24. Yoder's policy is not "renewed" in the *Benat* sense, as the Insurers were obligated to accept the premiums.

 ¶ 12 Further, the renewal of the policy in this case cannot be viewed as the formation of a new contract upon each renewal period, as the Insurers did not make a *new* offer every year as Yoder claims. (Appellant's Brief at 11.) It is hornbook law that in order to form a contract, there must be an offer, an acceptance, and consideration. *Yarnall v. Almy,* 703 A.2d 535, 538 (Pa.Super.1997). Here, the offer which established the terms of the contract was the Insurers' offer in 1989 to provide noncancelable insurance, at potentially increasing rates approved by the Commonwealth, for as long as Yoder paid the premiums. The terms of the contract to which the Insurers were bound were set in 1989, and, absent a decision on Yoder's part to cancel the policy (by declining to pay the premiums), the contract was intended to and did remain in force under those original terms.

¶ 13 In sum, we must reject Yoder's arguments that the Act applied to her policy and, accordingly, we must affirm the trial court's determination that the prior institutionalization exclusion in her policy was enforceable and its denial of her claim

for declaratory relief on that basis. We do not come to this conclusion lightly, as it is clear that, by the Act, the legislature intended to invalidate exclusions of the type relied on by the Insurers in this case to deny Yoder benefits under her nursing home policy. Nevertheless, it is the legislature's prerogative to tailor legislation as it sees fit, and its omission in the Act of any reference to policy "renewals" is dispositive. If the legislature intended a conclusion different from the one we have reached, it obviously may take remedial action.

 ¶ 14 In her second issue, Yoder asserts that the trial court erred in rejecting her bad faith claim: that the duty of good faith and fair dealing required the Insurers to inform her of a change in the law—i.e., the enactment of the Act—that potentially rendered invalid the exclusion contained in the policy. We may not address this claim, however, as she failed to include it in her court-ordered concise statement of matters complained of on appeal filed pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure,[5] and so we find it to have been waived. *See In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000) (noting that any issues not raised in a 1925(b) statement filed at the lower court's direction are waived, citing *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998)).

¶ 15 Moreover, even if this issue were not waived, we can find no support in Pennsylvania law for such an extraordinary duty. Yoder has cited no case that suggests that an insurer has the duty to inform its insureds of ongoing changes in the law that might affect their coverage,

---

**5.** Notably, in her 1925(b) statement, Yoder refers only to the declaratory judgment claim and the unfair trade practices claim.

and we could find none.[6] Further, the caselaw that is analogous is to the contrary. *See Treski v. Kemper Nat'l Ins. Cos.*, 449 Pa.Super. 620, 674 A.2d 1106 (1996) (insurers had no duty to inform Pennsylvania insureds that New Jersey statute may limit full tort recovery provided under the policy). Finally, as we have already determined that the statutory change, which Yoder asserts implicated the Insurers' duty to inform, does not apply to the insurance contract at issue, even if we found the Insurers had such a duty, we cannot envision how the insurers would have breached it in this case.

¶ 16 Order entering summary judgment affirmed.

**6.** The two insurance cases that form the core of Yoder's argument in this regard are unhelpful as they concern the duty of good faith and fair dealing of an insurer in the context of a claims dispute, where an insurer provided coverage information and/or counsel in response to an insured's claim. *See Miller v. Keystone Ins. Co.*, 535 Pa. 531, 636 A.2d 1109 (1994); *Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989). By contrast, here, Yoder asserts that, *in the absence of a claim or request*, the insurer has an affirmative duty to notify insureds of changes in the law.