470 A.2d 958

John G. FREEZE, Jr., Administrator of the Estate of John Goss Freeze, III, Deceased, Appellee,

v.

DONEGAL MUTUAL INSURANCE COMPANY, Appellant.

Supreme Court of Pennsylvania.

Argued May 26, 1983.

Decided Dec. 30, 1983.

■■■■■■

■■

■■■■■■■

■■

■■■■■■■

Laurence T. Himes, Jr., York, for appellant.

Hannah Leavitt, Harrisburg, James J. McCabe, Philadelphia, Clyde W. McIntyre, Harrisburg, amicus curiae, for PA Ins. Dept.

Richard C. Angino, Harrisburg, for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.*

This is the latest in a parade of cases coming before us for interpretative review of the Pennsylvania No-Fault Motor Vehicle Insurance Act (No Fault Act).[1] The single issue presented in this appeal is: Whether the Estate of a deceased victim is entitled to receive work loss benefits[2] under the provisions of the No-fault Act. The Superior

---

* This case was reassigned to this author on October 26, 1983.

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101, et seq.

2. Work loss means:
   (A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this Act; and
   (B) reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 103; 40 P.S. § 1009.103.

Court held that a deceased victim's estate is entitled to work loss benefits.[3] We agree and therefore affirm.

██ On January 14, 1977, John Goss Freeze, III, a minor child of eleven years of age, while riding a sled near his home in Wrightsville, Pennsylvania, was fatally injured when he was struck by an automobile. At the time of his accidental death, the minor-decedent was an insured under a no-fault automobile insurance policy issued by appellant, Donegal Mutual Insurance Company.[4] Subsequently, the minor decedent's father, John G. Freeze, Jr. (Appellee) was duly appointed administrator of the minor-decedent's estate. Appellee applied to the appellant for payment of no-fault wage loss benefits. Appellant Donegal refused to pay the claim. Appellee instituted a complaint in assumpsit against appellant Donegal seeking to recover work loss benefits pursuant to the policy of insurance and the Pennsylvania No-fault Insurance Act. The appellant filed preliminary objections in the nature of a demurrer asserting that under the Pennsylvania No-fault Act, work loss benefits are not provided for an eleven year old minor who has not entered the labor market prior to his death. The lower court agreed and sustained appellant's demurrer. The court also, sua sponte, granted appellee leave to amend his complaint to seek survivor's benefits and funeral expenses. The appellee chose not to amend and filed an appeal. The Superior Court reversed the lower court decision and held that the estate of a deceased victim is entitled to recover work loss benefits under the No-fault Act.[5] Appellant filed a petition for allowance of appeal which we granted.

3. *Freeze v. Donegal Mutual Insurance Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982).

4. The automobile policy was issued to the decedent's father, appellee, John G. Freeze, Jr. insuring the family vehicles.

5. Before addressing the merits of the case in *Freeze v. Donegal Mutual Insurance Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982), the Superior Court raised *sua sponte* the issue of the appealability of the trial court's order. The court raised this issue because the lower court's order granted the plaintiff Freeze leave to amend his complaint to seek "survivor's loss" benefits and funeral benefits. Ordinarily, where

Appellant argues that our opinion and decision in *Allstate v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980) restricts recovery of work loss benefits to those who are "survivors" of a deceased victim, and an estate is not a survivor within the meaning of the No-fault Act.[6]

In *Heffner*, it was decided that the right to work loss benefits is not terminated by the demise of a victim. We held that "survivors" of deceased victims are entitled to payment of these benefits under the terms of the No-fault Act. It follows then that, if work loss benefits do not terminate upon the death of a deceased victim, absent a statutory bar those benefits are recoverable by the deceased victim's estate. This is the natural, logical and compelling extension of our holding in *Heffner*. Upon a close and careful examination of the No-fault Act, we find no language which precludes the recovery of work loss benefits to the estate of a deceased victim.

We previously have noted[7] that the declared purpose of the No-fault Act, as set forth in its preamble is: "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Common-

---

a court sustains preliminary objections without dismissing the complaint or otherwise terminating the action, the order is interlocutory and lacks the finality needed to be appealable. The court went on to say, however, that if the amendment permitted by the order would, for all intents and purposes, put him out of court on the question he seeks to litigate, then the order is definite and final and is appealable. The court found that in this case, the amendment permitted by the order would drastically alter Freeze's cause of action so as to effectively put him out of court on the issue he sought to litigate, therefore, the order is final and appealable. We agree with this analysis.

6. "Survivor" means:
   (A) spouse; or
   (B) child, parent, brother, sister or relative dependent upon the deceased for support.
   Act of July 19, 1974, P.L. 489, No. 176 Art. I, § 103, 40 P.S. §§ 1009.103.

7. *Allstate v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980).

wealth highways ..." [8]   Our approach in interpreting the No-fault Act, has been to consistently apply the rule of liberal construction mandated by the Statutory Construction Act.[9]  We also have presumed that the legislature intended to favor the public interest over any private interest.[10]  This has meant that in close or doubtful insurance cases we have found coverage for the insured.  Further, this has meant that if we should err in ascertaining the intent of the legislature or the meaning of an insurance policy provision, we should err in favor of coverage for the insured.  *Allstate v. Heffner*, supra.

In support of the argument that only "survivors" are entitled to the wage loss benefits of a deceased victim, the appellant points to the No-fault Act and Section 201(a) which provides:

> If the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this Act.

Appellant argues that the language, *"any victim or any survivor of a deceased victim* is entitled to recover basic loss benefits," demonstrates the legislative intent that only survivors of a deceased victim and not the estate may receive wage loss benefits.  Apparently, this is because the estate of a deceased victim is not specifically mentioned.

▆▆▆▆  The appellant's argument, however, overlooks the very basic and fundamental fact that a person who dies as a result of injuries sustained in a motor vehicle accident is, within the meaning of the No-fault Act, a *victim*.[11]  That an

8.  Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 102, 40 P.S. §§ 1009.102.

9.  Act of Dec. 6, 1972, P.L. 1339, No. 290 § 3, 1 Pa.C.S.A. § 1928.

10.  Act of Dec. 6, 1972, P.L. 1339, No. 290 § 3, 1 Pa.C.S.A. § 1922.

11.  "Victim" means an individual who suffers injury arising out of the maintenance or use of a motor vehicle; "deceased victim" means a *victim* suffering death resulting from injury. [emphasis supplied] Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 103, 40 P.S. §§ 1009.103.

injured victim is entitled to basic loss benefits under the Act is beyond question. The fact that a "victim" dies as a result of his injuries and becomes, a "deceased victim", makes him no less a "victim" entitled to benefits under the provisions of the Act. A personal representative in the person of the executor or administrator of his estate stands in the shoes of the deceased victim as far as entitlement to benefits is concerned. The event of a victim's death activates the rights of statutory survivors to benefits under the Act. However, the activation of survivors' rights does not diminish or erase the victim's rights even though he now be a deceased victim. If it was intended that a victim's right to benefits be extinguished at his death, the legislature could have and would have said so directly.

The appellant argues that if work loss benefits are required to be paid to estates of deceased victims even where there are no statutory survivors, the work loss benefits would be, in effect, a $15,000 life insurance policy. Appellant's argument assumes payment to be automatic and fails to take into account all of the requirements of the Act which necessitate a showing of the loss claimed.[12] Nevertheless, even if payment is automatic as appellant suggest, estates of deceased victims are entitled to work loss benefits under the No-fault Act unless and until the legislature amends the statute to the contrary.

The order of the Superior Court is affirmed.

McDERMOTT and ZAPPALA, JJ., join in this opinion.

FLAHERTY, J., joins in this opinion and filed a concurring opinion.

ROBERTS, C.J., filed a dissenting opinion in which HUTCHINSON, J., joined.

12. Act of July 19, 1974, P.L. 489, No. 176, Art. II, §§ 201 and 205, §§ 40 P.S. §§ 1009.202; 1009.205.

HUTCHINSON, J., filed a dissenting opinion in which ROBERTS, C.J., joined.

NIX, J., did not participate in the consideration or decision of this case.

FLAHERTY, Justice, concurring.

I join the opinion authored by Mr. Justice Larsen, but write separately to emphasize that our decision in *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), holding that the right to work loss benefits under the No-Fault Act is not terminated upon the demise of a victim, emanated from the legislature's failure, when it could have easily and obviously done so, to have provided any express language in the Act indicating an intent that such benefits should not accrue to a victim's survivors, and the legislature's declaration that benefits under the Act are to be liberally construed. Statutory Construction Act, 1 Pa.C. S.A. § 1928(c) (1964–1982 Supp.); No-Fault Act, 40 P.S. § 1009.102(a)(3) (1983 Supp.) (Purposes: "[T]he maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents ....").

Express provisions in the No-fault automobile insurance laws of several other states expressly deny work loss benefits to the survivors of deceased victims, *but the Pennsylvania No-Fault Act contains no such provision. Allstate Insurance Co. v. Heffner*, 491 Pa. at 457, 421 A.2d at 634. During the more than three years that have elapsed since our decision in *Allstate Insurance Co. v. Heffner*, the legislature has not enacted a statutory bar to the recovery of work loss benefits by victims' survivors, and, thus, has not legislatively overridden the interpretation which this Court has accorded the Act.

The availability of work loss benefits to the survivors of a victim is not to be denied merely because the victim was a minor. The number of years the deceased victim would have worked had he survived the accident may readily be determined by reference to actuarial tables and similar

statistical compilations, and this is not negated by the fact that, as a minor, the victim had not yet entered the working world. Further, the No-Fault Act provides a formula for establishing the probable annual income of persons who have not previously earned income from work. 40 P.S. § 1009.205(c), (d)(C). The allowance of recovery of the future earnings of minors, under the Act, is not inconsistent with traditional principles of tort law which allow minors, who have not yet been employed, to recover damages for lost earning capacity, rather than bar the recovery of such damages as being too speculative. See generally *Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Super. 344, 355 fn. 10, 447 A.2d 999, 1005 fn. 10 (1982).

ROBERTS, Chief Justice, dissenting.

The majority compounds the error of *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), by expanding the class of persons entitled to "work loss" benefits under the No-Fault Act to include not only "survivors" of deceased victims, but also the representatives of the estates of deceased victims. I dissent, would overrule *Heffner*, and would reverse the order of the Superior Court, for although I joined in this Court's ruling in *Heffner*, I am now convinced that work-loss benefits were intended by the Legislature to be available only to a victim of an automobile accident who has not died as a result of it.

That work-loss benefits were legislatively designed to constitute only a form of disability income is evident from the two sections of the No-Fault Act relating to the payment of "work loss." Section 205, 40 P.S. § 1009.205, which sets forth the means by which work loss is to be computed, provides three different means for computing work loss, one for the case of a "regularly employed" victim of an automobile accident, one for a "seasonally employed" victim, and one for a victim who is "not employed." In the case of a "regularly employed" victim, the victim's "probable weekly income," determined by dividing "probable annual income" by fifty-two, is multiplied by "the

number of work weeks, or fraction thereof, the victim sustains loss of income *during the accrual period.*" 40 P.S. § 1009.205(a)(2). In the case of a "seasonally employed" victim, probable weekly income, determined by dividing probable annual income by "the number of weeks he normally works," is multiplied by "the number of work weeks, or fraction thereof, the victim was unable to perform and would have performed work *during the accrual period* but for the injury." 40 P.S. § 1009.205(b)(2). In the case of a "not employed" victim, probable weekly income, determined in the same manner as in the case of a regularly employed victim, is multiplied by "the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income *during the accrual period.*" 40 P.S. § 1009.205(c)(2). Section 106(a)(1) of the Act provides that "No-fault benefits are payable monthly as loss accrues. *Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained.*" 40 P.S. § 1009.106(a)(1).

The evident intent of section 205 is to supply a person disabled by an automobile accident with a flow of income which as nearly as possible approximates the person's income before the disabling accident: Each type of victim is to receive work-loss benefits based on two factors, the victim's probable earnings and the amount of work which likely would have been performed during the "accrual period" if not for the injury. As is seen from a reading of section 106(a)(1), which provides for the monthly payment of benefits "as loss accrues," the Legislature further intended to tailor the schedule of the payment of work-loss benefits to the amount of work loss actually suffered by the victim, rather than to require that the duration of the "accrual period" be estimated at the time of injury.

These aims of the Legislature in providing work-loss benefits are ignored by *Heffner* and today's decision, both of which view the death of a person involved in an automobile accident as having no effect on a work-loss claim.

Whereas under the terms of the No-Fault Act work-loss benefits are to be computed according to the regularity of the victim's employment in a given year and awarded "as loss accrues," under *Heffner* and today's decision work-loss benefits are to be awarded automatically, almost always in the amount of $15,000, the statutory ceiling on work-loss benefits. See § 202(b)(2), 40 P.S. § 1009.202(b)(2).

The strain placed on the No-Fault Act by *Heffner* and today's decision is best illustrated by the present record, on which work-loss benefits may be recovered by the estate of a decedent who was eleven years old at the time of the automobile accident, and who did not have a history of employment. If decedent had survived the accident, he would have had to show, pursuant to subsection (c)(2) of section 205, that there were work weeks during which he "would reasonably have been expected to realize income during the accrual period." 40 P.S. § 1009.205(c)(2). Because of decedent's age at the time of the accident, such a showing could not realistically have been made until several years after the accident, as until then decedent would not likely have entered the labor market. Under *Heffner* and today's decision, decedent's estate automatically qualifies for decedent's work-loss benefits at the instant that the accident occurs, on the theory that decedent would have become employed at some point in the future, and would have worked long enough to have earned $15,000. Yet under the mandate of section 106(a)(1) of the Act, the work-loss benefits may not be paid to decedent's estate until the "loss accrues," a situation which would not occur until decedent's hypothetical entry into the labor market, several years after the actual injury.

Underlying the determinations in *Freeze* and in *Heffner* is the erroneous premise that if the estate of a deceased victim is not permitted to recover work-loss benefits, then the estate will be barred from bringing a survival action against a third-party tortfeasor for loss of the deceased's earning capacity. Although section 301(a) of the Act pro-

vides for the abolition of tort liability arising from automobile accidents, section 301(a)(4) provides that

"[a] person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act."

40 P.S. § 1009.301(a)(4). When the provisions of the No-Fault Act relating to work-loss benefits, including section 202(a), are properly read, it is clear that the victim's death is as much a "limitation" on the payment of work-loss benefits as the statutory ceiling of $15,000 on work-loss payments specifically contained in section 202(a).*

The proper recourse for a decedent's estate is not the filing of a claim against a No-Fault insurer for work-loss benefits, but rather the institution of a traditional survival action for economic damages, such as those brought by the estates in *McClinton v. White*, 497 Pa. 610, 444 A.2d 85 (1982). Accordingly, the order of the Superior Court should be reversed, and the order of the Court of Common Pleas of York County sustaining the preliminary objections of appellant Donegal Mutual Insurance Company reinstated.

HUTCHINSON, J., joins in this dissenting opinion.

HUTCHINSON, Justice, dissenting.

I join Mr. Chief Justice Roberts in his view that *Heffner v. Allstate Insurance Company*, 491 Pa. 447, 421 A.2d 629 (1980), was wrongly decided and should be overruled. Moreover, even accepting the majority view that *Heffner* is the law and correctly interprets our No-fault Insurance Act, I write to express my concern with the statement in the Superior Court opinion that it sees no difficulty in calculating the work loss of a minor child without earnings history

---

* Indeed, if section 301(a)(4) were to be read otherwise, the estate of a wage-earning accident victim with years of working life ahead of him who survives an accident long enough to receive $14,000 in benefits, but not long enough to receive the $15,000 statutory maximum, would be unable to bring a survival action, because the lack of full compensation for loss would not be attributable to the $15,000 ceiling on benefits. Clearly it should be assumed that the Legislature did not intend such an unreasonable result. See 1 Pa.C.S. § 1922(1).

under the provisions of Section 205(c) of our act. As Mr. Justice Larsen, writing for the majority, states in his opinion, (slip op. p. 224) we must "take into account all of the requirements which necessitate the showing of the loss claimed."

Unlike Superior Court, I read Section 205 as subject to a threshold requirement that a plaintiff show a reasonable likelihood of earnings within the statutory periods set forth in Section 106(c)(1) of the act. Once again assuming *Heffner* to be the law, I would join the majority in remanding this case to Common Pleas only because we are unable in its procedural posture of demurrer to determine whether the eleven year old minor decedent would accrue any work loss within the limitations of the No-fault Act.

Accrued is used in the No-fault Act in the accounting sense of fixed and determined to the extent that it can be taken as due. Wages are accrued only when they are earned and so certain to become due that they can be taken into account. In accounting parlance, the contingency of a child's future earnings may be noted on a financial statement but they cannot be taken into account as accrued. Such a loss is contingent, not sustained.

Section 106(a)(1) states that loss is due and payable *not* at the time of the injury but as economic detriment is sustained.

Section 102(a)(6) of the act further states that a victim is to receive a reasonable amount of work loss. However, the reasonable amount he can recover from the no-fault insurer includes only those losses which have been sustained at the time his claim is filed. We cannot determine whether any losses were sustained at the time this claim was filed.

Section 103 says that all basic loss benefits are "subject to any applicable limitations, ... or other terms and conditions" provided in the act. Since work loss benefits are basic loss benefits they are subject to the two-year limitations period set forth in Section 106(c)(1) and the four-year statute of repose also set forth therein. Thus, the plaintiff

in cases such as this must allege facts and produce record evidence to show that the minor decedent had sustained or would sustain work loss at a time within either the two-year limitations period built into the act by Section 106(c)(1) or the four-year statute of repose provided in that same sub-section.

Moreover, to interpret the statute as Superior Court suggests would guarantee recovery of work loss in the maximum amount provided in Section 202(b), 40 P.S. § 1009.202(b), of the No-fault Act by all decedents without regard to their work history. Such a result would be plainly wrong and was never intended by the Legislature. No pious reference to remedial purposes or maximum feasible restoration of all individuals injured in motor vehicle accidents can disguise the fact that the Legislature also enacted no-fault to keep the cost of auto insurance at a reasonable level. It would fly in the face of that purpose to guarantee maximum work loss recovery in each death case, plus survivor's loss where there is a dependent,[1] and then permit recovery in tort for any additional sum that a jury may award on the basis of the same actuarial evidence.

Under the provisions of our No-fault Act as interpreted in *Heffner,* I do not believe either the estate or any other representative of an eleven-year-old minor with no earnings record is entitled to work loss benefits. Work loss benefits are a subclass of no-fault basic loss benefits. Basic loss benefits are paid only as they accrue. It would be wrong and contrary to the statute to award work loss benefits to a minor who has no earnings record, merely because a minor with a normal life expectancy would be statistically likely to have earnings in excess of $15,000.

Of course, the law must recognize such contingencies. Our statute does so through the tort actions which are preserved by Section 301. Taken together Sections 301 and 202 of our No-fault Act permit a jury to allow the estate of a decedent without a work history to recover in tort for

---

1. *See* our recent decision in *Chesler v. Government Employees Insurance Co.,* 503 Pa. 292, 469 A.2d 560 (1983).

future economic loss based on actuarial evidence. Section 301 permits recovery in tort for damages of the type sought here and Section 202 limits work loss, as defined in Section 103, to losses accrued within the time limits set forth in the statute. The benefits that this decedent's estate seeks are recoverable in tort on a fault theory and not as work loss under our No-fault Act because they have not accrued within the time limits the act sets forth. *See* Mr. Justice Flaherty's opinion in *Kamperis v. Nationwide,* 503 Pa. 536, 469 A.2d 1382 (1983).

ROBERTS, C.J., joins in this opinion.