535 A.2d 65

**Linda SENDER, Appellant,**

v.

**STATE FARM INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Nov. 13, 1987.

Decided Dec. 24, 1987.

Michael D. Rubin, Philadelphia, for appellant.

Alan Dion, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The issue in this appeal is whether settlement of a lawsuit between an insurance company and a physician who provided medical services to an insured constitutes a payment of benefits to the insured within the meaning of section 106(c)(1) of the Pennsylvania No-fault Motor Vehicle Insurance Act.[1] Appellant Linda Sender was injured in an automobile accident on July 27, 1978. She received medical treatment for injuries sustained in the accident from Dr. Seymour Shlomchik, who was authorized by Mrs. Sender to collect payment for the medical treatment from her insurance carrier, State Farm Insurance Company ("State Farm"). Dr. Shlomchik submitted claims for payment to State Farm, which paid $645 of the claims submitted on Mrs. Sender's behalf. It is undisputed that the last uncontested payment was a disbursement of $80 made to appellant via Dr. Shlomchik on February 9, 1979. A balance of $240 remained unpaid on that date.

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*, hereinafter referred to as the Act or the No-fault Act.

On October 27, 1981, appellant commenced suit against appellee for further benefits for work loss and medical treatment allegedly attributable to the July 1978 accident. State Farm interposed as its defense to the action the statute of limitations provision in the No-fault Act, 40 P.S. 1009.106(c)(1), which Act was in effect at the commencement of the lawsuit.[2] The pertinent provision of the statute reads as follows:

If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant, may be commenced not later than two years after the last payment of benefits.

40 P.S. 1009.106(c)(1). State Farm asserted that since their last payment of benefits was made on February 9, 1979, Mrs. Sender's action, instituted more than two years after that date, was time-barred.

Appellant attempted to bring her action within the limitations period by proving that on October 26, 1981, State Farm settled a lawsuit instituted by Dr. Shlomchik against the insurance company in 1979 for payment of approximately three hundred medical bills, including appellant's, then outstanding. Dr. Shlomchik was authorized by each of these patients to collect payment directly from State Farm for medical services rendered. When the insurance carrier refused to pay the claims presented by the physician, he aggregated the claims and brought suit. Dr. Shlomchik accepted $26,000 in full settlement of his claim, although State Farm denied liability for the claims in the release extinguishing the lawsuit.[3] Appellant contends that this

2. The No-fault Act was repealed by Act of February 12, 1984, P.L. 26, No. 1984–11, § 8(a), effective October 1, 1984.

3. The release provides in pertinent part as follows:
For the sole consideration of Twenty-six Thousand Dollars, ... the undersigned hereby releases and forever discharges State Farm Mutual Automobile Insurance Company, ... and all persons, firms or corporations liable or who might be claimed to be liable or responsible, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all demands, damages, actions, causes of action or suits of any kind or nature

settlement constitutes a payment of benefits which, as such, would render her action against State Farm for further benefits timely.

The trial court dismissed Mrs. Sender's suit on the theory that the action was time-barred. The court's dismissal of appellant's action was affirmed by the Superior Court. The Superior Court, in its unpublished memorandum opinion, indicated that, in its view, State Farm's settlement with Dr. Shlomchik may "not [be] convert[ed] into payment to the appellant so as to take the case out of the statute of limitations." *Linda Sender v. State Farm Insurance Co.,* No. 00386 Phila.1985, Superior Court memorandum opinion at 4–5 [356 Pa.Super. 597, 512 A.2d 58 (table)]. We granted review to consider this issue. We reverse and hold that a settlement entered into between an insurance company and a provider of medical services to its insured constitutes a payment of benefits by the insurance company to its insured.

The conclusion that a settlement entered into by an insurer with the provider of medical services on behalf of their insured is a payment of benefits to the insured is logically inescapable as well as wholly supportable by public policy. A review of the terms of the settlement itself demonstrates that in reaching an agreement with Dr. Shlomchik to discontinue his lawsuit, State Farm intended to satisfy, and did in fact satisfy Linda Sender's medical bill, among others.

The settlement provided that in consideration of $26,000, Dr. Shlomchik would release State Farm from liability for claims for payment of No-Fault benefits assigned by various insureds of State Farm to the physician which were asserted in the lawsuit. The settlement particularly released State Farm from liability for

> whatsoever, on account of claims for the payment of No-fault benefits (in particular "allowable expenses" as defined in the No-fault Act), allegedly assigned by various insureds of State Farm to the undersigned, asserted in, or which could have been asserted in, the cases of *Seymour Shlomchik, M.D. v. State Farm Insurance Company....* RR. at 13a.

those claims for payment for medical services rendered to those insureds and in such amounts listed in Schedule "A" [attached to the release] to the Third Amended Complaint (filed at C.P. April Term, 1979, No. 5092) of the undersigned against State Farm Insurance Company and those bills provided by the undersigned which are also attached to the Third Amended Complaint.

RR. at 13a.

Schedule A represented a listing of approximately three hundred patients of Dr. Shlomchik, including Linda Sender, whose claims were advanced by the physician and later compromised by the settlement. RR. at 15a–21a. Since Mrs. Sender's claim was included in the release, there is no basis upon which to conclude, as did the lower courts, that State Farm did not intend to pay a benefit to Linda Sender.

The irony of the lower court's conclusion may be gleaned from the following colloquy:

MR. RUBIN [Counsel for Ms. Sender]: P–9 was the third amended Complaint, Your Honor. Also attached to it, [Exhibit] P–8, is a schedule of the claimants that were settled underneath the release, the umbrella.

THE COURT: Let the record indicate that there is a schedule which is part of P–8 which lists the names.

Can we agree, Mr. Veneziale, these are the patients from whom Dr. Shlomchik was claiming payments due?

MR. VENEZIALE [Counsel for State Farm]: That's correct, Your Honor.

THE COURT: Among them is the name, Linda Sender. Under column DAC, I think you can agree, that is Date of Accident.

Do you agree with that?

MR. VENEZIALE: Yes.

RR. at 49a.

It is therefore undisputed that a claim for payment of Linda Sender's medical bill was included in the release and that State Farm, by reaching a settlement with Dr. Shlomchik, exculpated itself from further liability for any of the claim-

ants appearing on Schedule A, including Linda Sender. While it is apparent that State Farm did not evaluate the merits of each of the three hundred claims during settlement negotiations and even disclaimed liability, it is equally evident that the terms of the settlement do not contain any indication by State Farm that certain individual patients' claims were to be excluded from the settlement. Absent a clear indication from the agreement itself that certain claims were to be excluded, it is incumbent upon this Court to recognize that all the claims advanced by Dr. Shlomchik were discharged by the settlement.

Since the claim was for medical services rendered to its insured, it is clear that the settlement of the claim constituted a payment of benefits. Payment of medical expenses incurred as a result of an accident for which the No-fault insurance coverage was in effect, constituted a benefit of a policy to which the insured was legally and contractually entitled. The fact that the provider of these services agreed to a modification of his fees by virtue of the lump sum settlement does not negate the effect of the insurance company's undertaking. State Farm paid benefits to Linda Sender, its insured, by virtue of the settlement.

Public policy considerations also compel the conclusion that a settlement entered into between an insurance company and the provider of medical services to its insured is a payment of benefits to the insured. A contrary conclusion could well result in severely limiting the insured's ability to collect payments under the No-fault Act, which would undermine the statutory purpose of the Act. The preamble to the Act provides as follows:

The General Assembly hereby finds and declares that ... *the maximum feasible restoration* of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ... is essential to the humane and purposeful functioning of commerce. (Emphasis added)

40 P.S. § 1009.102(a)(3).

If a settlement was not deemed to be a payment of benefits, insurance companies might find it advantageous to defer payment of a claim filed by a service provider, and await commencement of a lawsuit by the unpaid provider. Thereafter, the insurance company could settle the claim or a number of claims without exposing itself to liability for payment of further benefits as of the date of settlement. Thus, if the lower courts' analysis prevailed, the insurance companies could defeat the purpose for the "rolling" statute of limitations simply by settling claims with a service provider rather than by making timely payment of submitted claims as required by section 1009.106 of the Act.[4]

. It is evident that the legislature, in permitting actions for further benefits to be brought up to two years from the date of the last payment, sought to maximize the time in which an insured may collect benefits for losses sustained as a result of an automobile accident.[5] Upon close analysis of the No-fault Act, we are unable to ascertain a legislative intention to exclude settlements of the kind presented in the

4. Sections 1009.106(a)(1) and (a)(2) provide as follows:
   (1) No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained.
   (2) No-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained, unless the obligor designates, upon receipt of an initial claim for no-fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within fifteen days after the close of each such period. If reasonable proof is supplied as to only part of a claim, but the part amounts to one hundred dollars ($100) or more, benefits for such part are overdue if not paid within the time mandated by this paragraph. An obligation for basic loss benefits for an item of allowable expense may be discharged by the obligor by reimbursing the victim or by making direct payment to the supplier or provider of products, services, or accommodations within the time mandated by this paragraph. Overdue payments bear interest at the rate of eighteen per cent (18%) per annum.

5. Of course, this does not affect the maximum dollar amount which may be recovered as benefits under the Act. *See* § 1009.202 of the Act.

instant case from consideration as a "benefit." [6] Indeed, as we observed in *Freeze v. Donegal Mutual Insurance Company*, 504 Pa. 218, 470 A.2d 958 (1983):

> Our approach in interpreting the No-fault Act, has been to consistently apply the rule of liberal construction mandated by the Statutory Construction Act. We also have presumed that the legislature intended to favor the public interest over any private interest. This has meant that in close or doubtful insurance cases we have found coverage for the insured. Further, this has meant that if we should err in ascertaining the intent of the legislature or the meaning of an insurance policy provision, we should err in favor of coverage for the insured. (Footnotes omitted)

*Id.* 504 Pa. at 223, 470 A.2d at 961. *See also Allstate v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980).

Our holding that a settlement of a lawsuit between an insurance company and a provider of services to an insured constitutes a payment of benefits to the insured would permit appellant to commence an action against State Farm for further benefits within two years of the date of the settlement. Since Mrs. Sender's suit was instituted on October 27, 1981, one day after the settlement was reached, her action was timely within the time-frame presented by section 1009.106(c)(1) of the Act. *See Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 455 A.2d 101 (1982).

Accordingly, the order of the Superior Court affirming the finding of the trial court is reversed and the cause is remanded to the Court of Common Pleas for further proceedings consistent with this opinion.

---

**6.** It is significant to us that the legislature, in drafting the limitations provision for commencement of actions for further benefits, elected to grant the insured two years from the last payment of benefits rather than imposing a more restrictive period, such as two years from the accident to bring suit.