636 A.2d 1109

**Mary C. MILLER, Administratrix of the Estate of John R. Miller, Deceased, and all others similarly situated, Appellees,**

**v.**

**KEYSTONE INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued May 5, 1992.

Decided Jan. 31, 1994.

Reargument Denied April 29, 1994.

532

A. Richard Feldman, Philadelphia, for appellant.

Richard C. Angino, Pamela G. Shuman, Harrisburg, for appellees.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This case involves a claim for post-mortem work loss benefits under the now-repealed No–Fault Motor Vehicle Insur-

ance Act, Act of July 19, 1974 P.L. 489, No. 176 §§ 101–701, 40 P.S. §§ 1009.101–1009.701. On August 12, 1980, John Miller, the named insured on a no-fault automobile insurance policy issued by the Appellant, Keystone Insurance Company (Keystone), sustained fatal injuries in a motor vehicle accident. Appellant promptly paid funeral, collision and survivor's loss benefits to Appellee Mary Miller, the mother of John Miller. On August 11, 1986, Appellee filed a claim on behalf of her son's estate, seeking post-mortem work loss benefits, plus interest and counsel fees, for herself and the class which she represents. Following a change in venue and an involved procedural history, the Court of Common Pleas of Dauphin County conducted a hearing and granted Appellant's motion for summary judgment on the basis that the Appellee's claim was barred by the statute of limitations.[1] On appeal, Superior Court interpreted our decision in *Dercoli v. Pennsylvania National Mutual Insurance Company*, 520 Pa. 471, 554 A.2d 906 (1989), applied it retroactively and reversed the trial court's grant of summary judgment. We granted allowance of appeal to consider Superior Court's interpretation of *Dercoli* as well as its retroactive application.

Initially, we note that we need not decide the issue of whether *Dercoli, supra,* requires retroactive application because of our determination that it is not applicable to the instant case. The essence of Appellant's argument is that Superior Court misinterpreted this Court's holding in *Dercoli* and applied it to a situation which is factually distinguishable. We agree. There being no error of law or abuse of discretion, we find the trial court properly entered summary judgment in favor of Appellant.

The pertinent factual background is as follows: Appellant paid Appellee $1,500 in funeral benefits on September 15, 1980, $5,652.97 in collision coverage benefits on October 1, 1980, and $5,000 in survivor's loss benefits over a period of

---

1. In orders entered on May 16, 1989, the court granted Appellant's motion for summary judgment as to Appellee's individual claim; denied on various grounds, all of the petitions to intervene; and denied the motion for class certification as no representative plaintiff remained to lead the class.

time ending on April 30, 1982. Appellee did not request nor did she seek post-mortem work loss benefits until August, 1986, when she filed a complaint averring that Keystone misled her into believing that her son's estate had no valid claim for work loss benefits. Appellee did not attend the trial court's hearing and the sole evidence introduced into the record on her behalf consisted of two exhibits offered by her counsel. One exhibit, to which Appellant objected, was a copy of a letter written by an independent adjuster, retained by Appellant, to Appellant's claims manager. This letter dated October 21, 1980, indicated that the adjuster knew of the estate's potential entitlement to work loss benefits by reason of recent court decisions but that the adjuster made no mention of "possible" wage loss benefits to Miller and would "await developments in that regard".[2] The other exhibit was a Keystone chart showing the various payments made to plaintiff, including a final payment of survivor's loss benefits on April 30, 1982.

Appellee argued to the trial court that collision benefits are not considered no-fault benefits, hence, a four year statute of

2. Pursuant to the trial court's orders to produce documents without regard to the existence of the work product doctrine and privilege, Keystone stamped "confidential" and produced the following document from the Arthur Reeher Company which was addressed to Mr. Sal Liberto, Keystone Claims Manager:

This will supplement our previous report dated 10–10–80 and acknowledge our Harrisburg Branch cc of 10–16–80, and our phone conversation of 10–20–80 along with serving as our closing report. As you have indicated in our telephone conversation of 10–20–80 that Mary Miller (mother of the deceased insured) would be entitled to survivors benefits which according to your Philadelphia office would involve a monthly check of $135.00 until the $5,000 survivors benefit is exhausted [sic] we have notified Mrs. Miller that she will be receiving monthly payments shortly in that regard. In addition, we made no mention to Mrs. Miller as discussed pertaining to possible benefits for lost wages and will merely await developments in that regard.

In light of the above, our activity in the York area would now appear to be complete while our Harrisburg Branch.follows further in their investigation and handling. Thereofre, [sic] we are taking liberty of retirring [sic] our file and submitting our service invoice for your consideration.

We again thank you.... (R. 170a).

limitations was applicable.[3] The trial court determined that even if the four year statute of limitations was triggered, Appellee's action was untimely as the four year period expired on August 12, 1984.[4] Appellee did not dispute the trial court's interpretation of the applicable statute of limitations in her appeal to Superior Court. Instead, she asserted that Keystone knew of the estate's entitlement to work loss benefits by reason of recent appellate decisions but consciously and deliberately elected to keep silent in its dealings with her. The Appellee contended that these actions constituted a breach of the duty of good faith and fair dealing announced in *Dercoli* which operated to toll the statute of limitations.

In the Superior Court's view, *Dercoli* held that an insurance company has an affirmative duty to inform an insured of all the potential claims that the insured may have against the company when the three following conditions exist: (1) the insurer has assumed the responsibility for processing its insured's claims; (2) the insurer knows that the insured is relying exclusively on its advice and counsel; and, (3) the insurer has knowledge regarding an additional claim for benefits to which the claimant is potentially entitled. Superior Court found that the responsibility to obtain for the estate all that it is potentially entitled to is implicitly imposed by the No–Fault Act. It also determined that when an insurer counsels an unrepresented claimant, the insurer tacitly knows that its level of information is greater than that of the insured. Finally, Superior Court held that even though the law is not settled on the question of whether an insured is able to recover at the time the insured's claims are being processed, the duty of good faith and fair dealing announced in *Dercoli*

3. Appellee also argued that Keystone's failure to provide her with a notice of rejection tolled the statute of limitations and that the limitations period was tolled because Keystone allegedly misrepresented the law to Appellee. Apparently the Appellee did not argue that Keystone had an affirmative duty of good faith and fair dealing that obligated Keystone to explain all potential benefits as *Dercoli* was not decided until March 3, 1989.

4. The court ignored Keystone's later payments of survivor's benefits ending on April 30, 1982, for these purposes since those payments were not for loss arising otherwise than from death.

imposes an affirmative obligation upon an insurer to inform its insured that it has knowledge of the possibility of a claim for recovery and that it is no longer acting in the interests of its unrepresented insureds in this matter. Finding some evidence for the imposition of the *Dercoli* duty of good faith and fair dealing, Superior Court reversed and remanded to determine whether Miller was relying upon the advice of Appellant's agent or was represented by her own counsel.[5]

Superior Court was incorrect in holding that *Dercoli* imposes an affirmative duty upon an insurer to advise and inform an insured of all potential claims when the insurer assumes the responsibility for processing the claim. Superior Court erroneously interpreted and impermissibly expanded our limited holding in *Dercoli* beyond its natural bounds by applying it to a situation which is factually distinguishable.

*Dercoli* involved a situation where the widow of an insured sued two automobile insurers for damages for breach of an alleged duty of good faith and fair dealing. The plaintiff alleged that she had been severely injured in an automobile accident in which her late husband had been at fault. Significantly, she further alleged that upon the advice and assurances of the insurers that she would receive everything to which she was entitled, she was induced to refrain from hiring counsel to represent her in her dealings with the insurers. While the insurers were still adjusting the plaintiff's claims, the defense of interspousal immunity was abolished. This meant that the plaintiff had a viable tort claim for negligence against her late husband's estate which was unquestionably covered by the policies' liability coverage. Notwithstanding the insurers's representations and assurances, the insurers did not advise the plaintiff of the potential tort claim or of the fact that the claim was clearly covered by the policies. The insurers in *Dercoli* successfully demurred to the complaint and the plaintiff appealed. Superior Court affirmed the trial court's dismissal. This Court reversed.

---

5. Superior Court also quashed the appeals of the remaining petitions to intervene and those parties have not sought leave to appeal.

Taking great care to emphasize that the insurers in *Dercoli* actively fostered the insured's erroneous belief that no viable tort claim existed, this Court stated:

The appellees' agents in this case voluntarily undertook to provide assistance and advice to appellant and in the process advised her against retaining independent legal counsel. The appellees were bound to deal with the appellant on a fair and frank basis, and at all times, to act in good faith. The duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim. (Citations omitted.) This is especially true where the insurer undertakes to advise and counsel the insured's claim for benefits.

520 Pa. at 477–478, 554 A.2d at 909. Clearly, the insurer's knowing and purposeful misrepresentation was critical to this Court's determination that the insurers were bound to disclose all of the benefits to which the claimant was entitled.

Appellant argues that Superior Court expanded the scope of the duty of good faith and fair dealing announced in *Dercoli* by broadly applying it to a factual situation where the insurer did not act in any manner to discourage the insured from obtaining legal counsel.

In this case, the record is totally devoid of any indication that the insurer voluntarily assumed to act as the insured's counsel. In fact, there is no allegation nor any evidence in the record to suggest that Appellant induced Appellee to refrain from retaining counsel, that Appellant made any promises to Appellee, or that Appellant in any way voluntarily transformed itself into a legal advisor.

We find this case factually similar to *Taglianetti v. Workmen's Compensation Appeal Board*, 503 Pa. 270, 469 A.2d 548 (1983). *Taglianetti* involved a case where a widow filed a claim for survivor's benefits under the Workmen's Compensation Act six years after her husband's death. The claimant

received a check representing three months of death "gratuity" benefits shortly after her husband's death in April, 1973. Two months later, the claimant requested information from her late husband's employer as to any widow's benefits due her. Unidentified employees informed her that there were no other benefits apart from life insurance and the death gratuity that she received. The Plaintiff did not seek advice from any other source and claimed that she did not learn of her potential entitlement to work-related benefits until 1978, when she read a newspaper account of a case regarding this Court's decision in two other "heart attack" cases. On April 3, 1979, the Plaintiff filed a claim alleging that the statute of limitations was tolled because her late husband's employer failed to notify her of her right to file a claim for death benefits. This Court refused to impose an affirmative duty upon an employer to apprise an employee or claimant of all available benefits. We held that in the absence of evidence of fraud, intentional deception, or the making of misleading statements, the employer had no affirmative duty to apprise a compensation claimant of any or all available benefits.

Although the opinion announcing the judgment of the court in *Dercoli*, expressed the view that this Court's prior decision in *Taglianetti* should be overruled,[6] Justice Papadakos, joined by Justice McDermott wrote separately to make clear that he did not agree with the proposed overruling of *Taglianetti*. In reaffirming the principle of *Taglianetti*, Mr. Justice Papadakos wrote:

In *Taglianetti, supra*, we agreed with the contention that an employer was under no legally imposed affirmative duty to provide information of possible worker's compensation benefits to a deceased employee's spouse where there was no evidence of fraud, intentional deception, or the making of misleading statements.... [In *Dercoli*, ] Once the insurers

6. "We believe that *Taglianetti* was wrongly decided in that the decision in that case tends to relieve insurers and similar entities of the obligation to deal fairly, honestly, openly and in good faith with lay-claimants and non-experts who may be entitled to benefits and who are the very people the insurers have obligated themselves to protect." 520 Pa. at 479, 554 A.2d at 910. (Opinion of Larsen, J.).

knowingly and purposefully talked the widow out of seeking independent legal counsel, the insurers themselves voluntarily placed themselves in the position of protecting the widow and obtaining for her all benefits that were reasonably due under the facts and state of law known to the insurers.... Our majority opinion does not transform insurance companies into legal service advisors for claimants, as feared by the dissent. On the contrary, in this case, the insurers themselves voluntarily transformed themselves into legal advisors to the widow.... *Dercoli,* 520 Pa. at 481–482, 554 A.2d 906.

■ Because the *Dercoli* opinion in support of overturning *Taglianetti* commanded the allegiance of only two members of this Court, this view is without precedential authority.[7] *Commonwealth v. Covil,* 474 Pa. 375, 378 A.2d 841, 844 (1977); *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977). Notwithstanding this confusion expressed in *Dercoli, Dercoli* is not inconsistent with *Taglianetti.* Rather, we find that *Dercoli* was not the creation of a new duty, but simply an application of the principles enunciated in *Taglianetti.*

■ We reaffirm our earlier rulings that in the absence of evidence of fraud, intentional deception, or the making of misleading statements, the employer has no affirmative duty to apprise a compensation claimant of any or all available benefits. This holding is in accord with our previous decisions in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company,* 494 Pa. 501, 431 A.2d 966 (1981), and *Smith v. Harleysville Insurance Company,* 494 Pa. 515, 431 A.2d 974 (1981), where this Court declined the opportunity to create a judicial remedy for bad faith conduct which occurs under the No–Fault Act.

■ It is undisputed that because the Appellee's action for work loss benefits was not commenced until almost six years after her son's death it is barred by the No–Fault Act's

7. Only former Mme. Justice Stout joined in the opinion announcing the judgment of the court.

statute of limitations.[8]  The fundamental and long-standing rule in Pennsylvania has been that a lack of knowledge, mistake or misunderstanding does not operate to toll the statute of limitations.  *Sachritz v. Pennsylvania National Mutual Casualty Insurance Company*, 293 Pa.Super. 483, 439 A.2d 678 (1981), *aff'd*, 500 Pa. 167, 455 A.2d 101 (1982).[9]  If, however, the insurer fraudulently or deceptively lulls the insured into inaction, the principle of estoppel will operate to prevent the insurer from claiming the defense of untimeliness when the insured's failure to timely file a petition has resulted from the insurer's own actions.

In the present case, the record is devoid of any evidence that Keystone acted to defraud the Appellee.  There is absolutely no evidence from which it could be reasonably interpreted that Keystone's words or conduct lulled the Appellee into a false sense of security.  We are not confronted here with an insurer's actions which fostered an insured's erroneous belief that a claim has been or will be processed.  To the contrary, the record unequivocally indicates that there was no discussion related to post-mortem survivor's benefits or the filing of a claim.  Moreover, any claim that Appellant deceptively lulled the Appellee into inaction is fruitless as the Appellee's estate

8.  The no-Fault Act provides the following limitations period for actions to recover benefits:

> (1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.  If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.

40 P.S. § 1009.106(c)(1).

9.  In *Sachritz*, the plaintiff was a survivor who received some no-fault benefits from her deceased husband's insurer, but apparently had not been advised as to the possibility of a claim for post-mortem work loss benefits and failed to file a timely claim for them.  This Court affirmed the Superior Court's finding that the insured's lack of knowledge of the estate's potential claim for post-mortem work loss benefits does not toll the statute of limitations on her claim.

was only potentially entitled to benefits at the time she filed her original claim for benefits.[10]

The Order of Superior Court vacating the Order of the trial court is reversed and the Order of the Court of Common Pleas for Dauphin County granting Appellant's motion for Summary Judgment on June 2, 1989, is reinstated.

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

CAPPY, J., files a Dissenting Opinion in which PAPADA-KOS, J., joins.

CAPPY, Justice, dissenting.

I am constrained to dissent.

On August 12, 1980, John R. Miller died in a motor vehicle accident. At that time he was the named insured on a Pennsylvania No–Fault Insurance Policy issued by Appellant, Keystone Insurance Company ("Keystone"). Keystone was immediately notified of its insured's fatality. Keystone, through its agent and without specific demand, voluntarily undertook to investigate and pay funeral, collision and survivor's loss benefits to Appellee, Mrs. Miller, the unrepresented mother of the named insured on the policy. However, at this time neither Keystone, nor its agent who allegedly assisted

10. On September 22, 1980, at approximately the same time the Miller estate's claims were being processed, this Court decided the companion cases of *Allstate Insurance Company v. Heffner,* and *Pontius v. United States Fidelity and Guaranty Company,* 491 Pa. 447, 421 A.2d 629 (1980). *Heffner* concerned a claim for work loss benefits brought by the survivor of a deceased victim. *Pontius* concerned a claim for work loss benefits brought by the administrator of a deceased victim's estate. In each case, this Court affirmed the Superior Court's reversal of the trial court's grant of judgment on the pleadings in favor of the insurer. Although these decisions held that survivors of deceased victims are entitled to payment of work loss benefits, it was not until December 30, 1983, three months after the Appellee received her last benefits, and more than a year after the statute of limitations expired that this Court held that an estate is entitled to post-mortem work loss benefits. *Freeze v. Donegal Mutual Insurance Co.,* 504 Pa. 218, 470 A.2d 958 (1983).

Mrs. Miller in presenting her claim to Keystone, informed Mrs. Miller concerning the potential for recovery of post-mortem work loss benefits under the No–Fault Act [1] or of the recent appellate activity concerning such recovery, which was unfavorable to Keystone.[2]

Six years later, after learning of entitlement to post-mortem work loss benefits arising out of her son's fatal accident, Mrs. Miller filed a claim on behalf of her son's estate, seeking those benefits from Keystone, plus interest and counsel fees. The gravamen of her Complaint was that Keystone had breached its duty of good faith and fair dealing in knowingly misleading her into believing that she had no valid claim for work loss benefits, the representation upon which she had justifiably relied to her detriment. The trial court subsequently granted summary judgment in favor of Keystone on the basis that Mrs. Miller's Complaint was filed after expiration of the applicable statute of limitations.

On appeal, the Superior Court vacated the summary judgment entered below upon a determination that there existed some evidence for the imposition of the duty of good faith and fair dealing announced by this Court in *Dercoli v. Pennsylva-*

1. No-fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.101–1009.701, repealed.

2. In 1980, this Court held that survivors of deceased victims of motor vehicle accidents were entitled to post-mortem work loss benefits pursuant to the Pennsylvania No-fault Act, *Allstate Insurance Company v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), and impliedly determined that such recovery also extended to the deceased victim's estate. *Pontius v. U.S.F. & G.*, 491 Pa. 447, 421 A.2d 629 (1980). As determined by the Superior Court, it cannot be denied that the insurance industry in this Commonwealth was aware of this appellate activity, and an internal memorandum prepared by Keystone to Mrs. Miller's claim representative regarding the information disclosed to her provides some evidence that Keystone was aware of the unfavorable appellate activity in this area. *Miller v. Keystone Insurance Company*, 402 Pa.Super. 213, 229, 586 A.2d 936, 944 (1991). Moreover, it is clear that neither *Heffner* and *Pontius*, nor this Court's express determination that a deceased victim's estate is entitled to recover for work-loss in *Freeze v. Donegal Mutual Ins. Co.*, 504 Pa. 218, 470 A.2d 958 (1983), represented a "change" in the law of Pennsylvania. To the contrary, these cases merely decided what the No-fault Act had always required, and furthermore, served to dispel an incorrect interpretation of the Act being advanced by insurers.

*nia National Mutual Insurance Company,* 520 Pa. 471, 554 A.2d 906 (1989), which tolled the statute of limitations. It held that the *Dercoli* duty of good faith and fair dealing imposed an affirmative obligation upon an insurer to inform its insured that it has knowledge of the possibility of a claim for recovery and that it is no longer acting in the interests of its unrepresented insured in this matter where:

> (1) the insurer had assumed the responsibility for processing its insured's claims; (2) the insurer knew that the insured was relying exclusively on its advice and counsel; and (3) the insurer had knowledge regarding an additional claim for benefits to which [the insured] was entitled and it failed to disclose such information.

*Miller,* 402 Pa.Super. at 223, 586 A.2d at 941. Despite the soundness of this holding, the Majority herein concludes that the Superior Court erroneously interpreted and impermissibly expanded the holding in *Dercoli* in this instance. I disagree.

The Majority concludes that *Dercoli* was carefully limited to situations where the insurer "actively fostered the insured's erroneous belief," and involved a situation where a "knowing and purposeful misrepresentation was critical" to the existence of a duty to disclose all available benefits. On this basis the Majority then determines that the Superior Court improperly expanded the scope of the *Dercoli* duty by broadly applying it to a *factually distinguishable situation.* It finds that here, in contrast to the situation in *Dercoli,* Keystone did not voluntarily assume or transform itself into a position of legal advisor, did not act in any manner to discourage Mrs. Miller from obtaining legal counsel, and did not make any promises to Mrs. Miller. The Majority then goes on to conclude that the matter *sub judice* is governed by *Taglianetti v. Workmen's Compensation Appeal Board,* 503 Pa. 270, 469 A.2d 548 (1983). This is error.

Unlike the Majority, I cannot conclude that the existence of the duty in *Dercoli* necessarily turned on, or should turn on, an affirmative undertaking of an insurance company to advise and counsel its insured in the insured's claim for benefits. It is my strong belief that the presence of such evidence in

*Dercoli* only provided further support for the imposition of the long recognized duty owed by an insurance company to deal with the insured fairly and in good faith, see *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930), a duty that this Court reasonably determined to include, in a "non-adversarial setting," a "duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim." *Dercoli*, 520 Pa. at 478, 554 A.2d at 909. My interpretation is further supported by this Court's statement in *Dercoli* that *"[t]his is especially true* where the insurer undertakes to advise and counsel the insured in the insured's claim for benefits." *Id.* (Emphasis added).

Furthermore, by interpreting *Dercoli* as applying only to the situation where an insured voluntarily assumes to act as "legal advisor" for its insured, the Majority fails to acknowledge that the assumption of such a "role" by the insurer would give rise to a duty much greater than that of good faith and fair dealing. It would support the existence of a fiduciary duty, the highest standard of duty implied by law—a duty arising from the relationship of legal advisor, which implies and necessitates great confidence, trust, candor and the highest degree of good faith to act, and *advocate*, for the benefit of the other as to matters within the scope of the relationship.

Such a limitation is also contrary to the responsibility implicitly imposed upon insurers and their agents by the No–Fault Act itself, which had a primary purpose of, *inter alia*, insuring that a claimant would not need an attorney to secure basic benefits. This purpose was effectuated through a nonadversarial scheme, which placed the burden on the insurer to investigate and pay claims, and encouraged claimants to place their trust and reliance in their insurance companies to see to it that claims were handled properly and that they received all benefits to which they were entitled.

Finally, and most importantly, I simply cannot condone the Majority's attempt to minimize and mischaracterize the alleged relationship of cooperation and trust apparently existing

between Keystone, its agent and Mrs. Miller in this instance, by misplaced reliance upon *Taglianetti.* In *Taglianetti,* it was an *employer's* insurance company, an unquestionably formidable *adversary,* who was relieved of an affirmative duty to apprise a deceased employee's wife of all available workmen's compensation benefits. I agree that in that instance, there is no *Dercoli* duty of good faith and fair dealing absent fraud, intentional deceit or misleading statements with regard to the claimant's interest. However, in the case *sub judice,* the insurance company is not an *adversary,* nor does it represent an *adversary.* In fact, the insurance company was the insurer of the claimant's deceased son and now represents the interest of the claimant, the personal representative of the son's estate. There simply is no adversarial relationship either real or imagined. *Taglianetti* does not apply to these facts.

Therefore, under the circumstances as alleged and argued by Mrs. Miller, a non-adversarial scenario, I would hold that, pursuant to its duty of good faith and fair dealing, Keystone had an affirmative obligation to disclose to its insured: that it had knowledge of the possibility of a claim for recovery; that the potential for an adversarial relationship existed; and that it was no longer acting in the interests of its unrepresented insured in this matter. In my opinion, this requirement would be a minor obligation given the alleged relationship of the parties that had theretofore involved a spirit of cooperation and trust.[3]

3. Contrary to the position of the Majority, I believe that, if Mrs. Miller can establish a basis for the duty that I and the Superior Court have described, Keystone's breach thereof would serve to toll the running of the statute of limitations in this matter under the principle of estoppel. My review yields no basis for the Majority's conclusion that Mrs. Miller cannot establish that she was fraudulently or deceptively lulled into a false sense of security, given the alleged actions, omissions and relationships of the parties, and the limited record developed prior to entry of summary judgment. To further support the dismissal of this claim on the basis that there was no discussion between Mrs. Miller and Keystone related to post-mortem survivor's benefits or the filing of a claim simply begs the question.

In addition, the Majority's attempt to further dismiss Mrs. Miller's claim on the basis that the "estate" possessed only a potential entitlement to benefits at the time Mrs. Miller filed her original claim for benefits is seriously flawed. As thoroughly described by the Superior

546

Accordingly, based upon the foregoing, I would affirm the decision of the Superior Court.

Thus, I respectfully dissent.

Court herein, while this Court did not finally put to rest the issue of an estate's claim for work-loss benefits until *Freeze v. Donegal Mutual Ins. Co.*, 504 Pa. 218, 470 A.2d 958 (1983), *Freeze* did not change the law of Pennsylvania. It merely enforced what the No-fault Act had always required, and essentially only provided what this Court had implied in the *Heffner–Pontius* cases. Moreover, the question is not whether Keystone's insureds were able to recover between the *Heffner–Pontius* cases and the *Freeze* decision, but rather, whether Keystone had an obligation to inform them of the potential for recovery and that it was no longer acting in the interest of its unrepresented insureds. Finally, it is clear that as of the date of this Court's decision in *Freeze*, only three months had elapsed since Mrs. Miller received her last benefits, and quite conceivably *a full year* remained before the estate's claims would have been time barred. 402 Pa.Super. at 230–232, 586 A.2d at 944–45.